[No. 12320. In Bank.—January 21, 1888.]

# SARAH H. BARNARD, APPELLANT,· *v.* C. N. WILSON, RESPONDENT.

MORTGAGE—FORECLOSURE—ESTATE OF DECEDENT—DISTRIBUTION—PURCHASER NEED NOT APPEAR AT—ESTOPPEL.—On the 19th of March, 1875, the defendant, being then the owner of the land in controversy, executed a mortgage in fee thereon, and on the 1st of July, 1876, conveyed the land to a person who afterwards became his wife. On the 14th of June, 1879, the wife died intestate, leaving the defendant and a sister as her only heirs. On the 27th of the same month, the sister conveyed all her interest in the land to the defendant. On the 16th of October, 1879, an action to foreclose the mortgage was commenced against the defendant, in which a decree of foreclosure was rendered on the 1st of March, 1880. The land was sold under the decree on the

16th of October, 1882, to the plaintiff, to whom, on the 27th of April, 1883, there having been no redemption, the sheriff executed a deed. On the 9th of July, 1883, letters of administration were granted to the defendant on the estate of his deceased wife, and on the 9th of February, 1884, a decree was entered therein, distributing the land to him. On the 17th of February, 1881, the land was sold in payment of delinquent. taxes assessed for the year 1880. On the 3d of March, 1882, after the time to redeem had expired, the defendant acquired the certificates of sale, and subsequently, on the 13th of July, 1886, obtained from the tax collector a deed of the land. *Held,* that the plaintiff's title related back to the date of the mortgage, and was adverse to that of the estate, and that she was not estopped from afterwards asserting her title by reason. of her failure to appear in the probate proceedings, and ask for a distribution of the land to herself.

ID. — TAX TITLE ACQUIRED BY MORTGAGOR. — *Held further,* that whatever· title was acquired by the defendant, under the tax certificates and deed, immediately passed to and vested in the plaintiff.

ID. — PAYMENT OF TAXES BY MORTGAGOR — PURCHASE OF TAX TITLE. — It is the duty of a mortgagor of land, who is the owner thereof, when. an assessment is made, and taxes thereon are levied and become payable, to pay the same; and he cannot by neglecting so to do, and by allowing the land to be sold for the taxes, add to or strengthen his title:. by purchasing at the tax sale himself, or by subsequently buying from a stranger who purchased at the sale.

ID. — FORECLOSURE — MORTGAGE IN FEE — AFTER-ACQUIRED TITLE. — When. a mortgage conveys the estate in fee, a decree of foreclosure is in effect a decree that the estate vested in the mortgagor at the date of the mort-· gage, as well as that which shall at any time come to him, be sold; and. the sheriff's deed to the purchaser operates to transfer to him the estate· so directed to be sold.

APPEAL from a judgment of the Superior Court of Los: Angeles County, and from an order refusing a new trial..

The facts are stated in the opinion.

*Brousseau & Hatch,* and *Will D. Gould,* for Appellant.

*Chapman & Hendrick,* for Respondent.

BELCHER, C. C.—This action was brought to quiet the plaintiff's title to four lots of land in the city of Los Angeles. The case was submitted in the court below upon an agreed statement of facts, and judgment was rendered in favor of the defendant. The plaintiff moved

for a new trial, and has appealed from the judgment and order denying her motion.

The material facts of the case are as follows: On the nineteenth day of March, 1875, the defendant, being then the owner of the lots in controversy, mortgaged them to W. C. Barnard, to secure the payment of $1,375. The mortgage used the words, "has granted, bargained, sold, conveyed, and confirmed, and does hereby grant, bargain, sell, convey, and confirm, unto the said party of the second part, his heirs and assigns," etc. On the first day of July, 1876, the defendant, for a valuable consideration, conveyed the lots to Miss M. M. Wheeler; and thereafter, in the month of December following, they intermarried. On the fourteenth day of June, 1879, Mrs. Wilson, formerly Miss Wheeler, died intestate, leaving her husband, the defendant, and one sister her only heirs; and on the twenty-seventh day of the same month, the sister, by deed of quitclaim, conveyed all her right, title, and interest in and to the lots to the defendant. On the sixteenth day of October, 1879, an action was commenced against the defendant to foreclose the said mortgage, and such proceedings were thereafter had that on the first day of March, 1880, a decree was signed foreclosing the mortgage, and ordering a sale of the mortgaged property to satisfy the amount found due, viz., $1,230; and on the sixteenth day of October, 1882, under and in pursuance of the decree and order of sale, the sheriff sold the property at public auction to the plaintiff, and on the same day issued to her his certificate of sale, and thereafter, on the twenty-seventh day of April, 1883, there having been no redemption, executed and delivered to her his deed conveying to her the property so sold. On the ninth day of July, 1883, letters of administration on the estate of his deceased wife were duly granted to the defendant, and he continued to act as administrator of the estate until the ninth day of February, 1884, when a decree was entered distributing the

whole of the property of the estate, including the lots in controversy, to him. In the year 1880 the lots were assessed, and taxes were levied against them for city purposes. The taxes became delinquent on the first day of November, 1880, and not being paid, the city tax collector, after due notice, sold the lots on the seventeenth day of February, 1881, to pay the taxes, percentages, and costs. O. Barnard was the purchaser at the tax sale, and received from the collector a certificate of sale for each lot. The time to redeem from the sales expired on the eighteenth day of February, 1882, but no redemption was had; and on the third day of March, 1882, Barnard assigned his certificates to the defendant, who held them until the thirteenth day of July, 1886, and then obtained from the tax collector a deed in proper form and properly executed for each of the lots.

Upon these facts, the question for decision is, Was the title to the lots in the plaintiff or in the defendant? It is argued for respondent that the decree of the probate court, distributing the lots to him, was in the nature of a judgment *in rem*, which conclusively determined, as against the appellant, that he was the owner of them; that if the appellant claimed to be the owner of the lots, she should have appeared before the court, and have asked to have them distributed to her, and that as she failed to do so, she is now estopped from asserting title to them. In support of their argument, counsel cite sections 1665, 1666, 1678, and 1908, Code of Civil Procedure; *Estate of De Castro* v. *Barry*, 18 Cal. 97; *Freeman* v. *Rahm*, 58 Cal. 111.

Section 1665 provides that upon the final settlement of the accounts of an executor or administrator, the court must proceed to distribute the residue of the estate " among the persons who by law are entitled thereto." Section 1666 requires the court, in the order or decree, to name the persons and the proportions or parts to which each shall be entitled, and declares that "such

order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." Section 1678 provides that upon distribution of the real estate, if any of the original heirs, legatees, or devisees have conveyed their shares to other persons, "such shares must be assigned to the persons holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees." And section 1908 makes the judgments of courts sitting in probate, in respect to the matter directly adjudged, as conclusive between the parties litigating for the same thing under the same title, and in the same capacity as other judgments. (*Bath* v. *Valdez*, 70 Cal. 361.)

In *Estate of De Castro* v. *Barry*, the only points decided were, that the probate court had jurisdiction to make partition of the real estate of the deceased among the alienees of the heirs or devisees, and that where a wife died leaving separate property, and a husband and two infant children, and one of the children died, the surviving child, and not the father, inherited the deceased child's share.

In *Freeman* v. *Rahm, supra*, J. R. Campbell, one of the heirs, made a verbal sale of his interest in the real property of an estate to the plaintiff, and gave to the plaintiff a power of attorney to receive his distributive share of the estate. The share was in fact distributed to Campbell, and no mention of the plaintiff, or of the purchase by him, or of the power of attorney, was made in the decree. After the distribution, a creditor commenced an action against Campbell, caused his interest in the property to be attached, and in due time obtained judgment. After the attachment, Campbell conveyed all his interest in the property to the plaintiff. Under an execution issued on the judgment, the sheriff was proceeding to sell the property, and the action was brought by plaintiff to restrain the sale. It was held that if the

plaintiff had any rights, he was estopped by the decree of distribution from asserting them, but that in fact the power of attorney gave him no right to take distribution to himself, as it did not purport to be and was not a transfer of the title.

We are unable to see that either of the sections or cases cited is in point here. The appellant was not an heir, devisee, or legatee of Mrs. Wilson, nor did she claim the property under or through Mrs. Wilson's estate. On the contrary, she asserted and asserts title only under and through the defendant. The mortgage was in fee, and when it was executed and foreclosed, the whole title was in the defendant. The fact that between those times the title, subject to the mortgage lien, passed from him and then back to him is immaterial. "A mortgagor is under obligation, from the nature of the mortgage contract, to preserve the property pledged for the purposes of the original security; and on grounds of public policy, to insure faith and fair dealing, he is estopped, independent of covenants of warranty, from denying the existence of the lien which he has attempted to create, or defeating its enforcement against the property on which it was placed; and those claiming under the mortgagor are equally estopped." ( *Clark* v. *Baker*, 14 Cal. 613; 76 Am. Dec. 449; *Lent* v. *Morrill*, 25 Cal. 492; *Land Ass'n* v. *Viera*, 48 Cal. 572; *Orr* v. *Stewart*, 67 Cal. 275.) The appellant's title related back to the date of the mortgage, and was adverse to that of the estate. The probate court had, therefore, no jurisdiction to pass upon it; and appellant suffered no prejudice by failing to appear and ask for distribution to herself. "The probate court has jurisdiction to settle *the estate* of a deceased person, and has no power, save in certain excepted instances, to determine disputes between the heirs or representatives of the deceased and third persons." ( *Theller* v. *Such*, 57 Cal. 447; *Bath* v. *Valdez*, 70 Cal. 350.)

It is also argued for respondent that, if he did not

already have title to the lots, he acquired a good title to them under the tax deeds which he received in 1886. The argument is based upon the fact that the decree of foreclosure was entered before the assessment on which the taxes were levied was made; and before the time for making the assessment had arrived. And it is contended that the relation of mortgagor and mortgagee was terminated by the decree, and that thereafter there was nothing to prevent the respondent from purchasing the property, and acquiring a title which could not be affected by the foreclosure proceedings. There are two sufficient answers to this theory.

1. While it is true that the decree of foreclosure was entered on the first day of March, 1880, and the assessment was made for the fiscal year commencing on the first day of April, 1880, still the sale under the decree was not made until the sixteenth day of October, 1882. Now, the respondent was the owner of the lots when the decree was entered, and continued to be the owner of them until the time of the sale. Being the owner when the assessment was made, and when the taxes were levied and became payable, it was the duty of respondent to pay the taxes, and by neglecting to perform that duty, he could gain no advantage to himself. (1 Jones on Mortgages, sec. 680.) The rule upon this subject was very clearly and concisely stated in *Moss* v. *Shear*, 25 Cal. 38, Sanderson, C. J., delivering the opinion, as follows: " If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same, and allowing the land to be sold in consequence of such neglect, add to or stregthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale; otherwise, he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes. This the law does not permit, either directly or indirectly."

2. In *Land Ass'n* v. *Viera, supra,* it was held that when a mortgage conveys the estate in fee, a decree enforcing the same is in effect a decree that the estate, vested in the mortgagor at the date of the mortgage, as well as that which shall at any time come to him, be sold; and that the sheriff's deed to the purchaser operates to transfer to such purchaser the estate so directed to be sold. The court said: "The rule that a sheriff's deed delivered upon execution sale imports no warranty of title, but transfers to the purchaser only such estate as was held at the time by the defendant in execution, has no practical application to a sheriff's deed delivered upon foreclosure of a mortgage in fee; for, as we have seen already, the defendant in the latter case must continue to be estopped, by the terms of the mortgage deed itself, to deny that the estate was other or less than an estate in fee in the premises. These terms, importing a conveyance of the fee, are equivalent to a covenant of general warranty of title running with the land." Under this rule, whatever right or title to the lots was acquired by respondent, under the certificates of sale which were assigned to him in March, 1882, or under the deeds which he received in July, 1886, immediately passed to and vested in the appellant.

We conclude, therefore, that upon the facts appearing in the record, the appellant was entitled to judgment in the court below, and that the judgment rendered against her, and the order denying her motion for new trial, should be reversed, and the cause remanded for further proceedings.

Hayne, C., and Foote, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for further proceedings in accordance with the views above expressed.

Rehearing denied.