[L. A. No. 17800. In Bank.—July 24, 1941.]

RICHARD GARVEY, Jr., et al., Petitioners, v. H. L. BYRAM, as Tax Collector, etc., Respondent.

Richard Garvey, Jr., *in pro. per.,* J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, and A. Curtis Smith, Deputy County Counsel, for Petitioners.

Landels, Weigel & Crocker and Walter S. Home for Respondent.

TRAYNOR, J.—Petitioners have instituted this proceeding in *mandamus* to compel the respondent, the tax collector of Los Angeles County, to execute a deed to petitioner Garvey pursuant to a public tax sale of certain real property. Respondent has generally demurred.

Garvey was the owner of the property in question when the tax lien attached and when the property was deeded to the state for unpaid taxes. Pursuant to the procedure prescribed in Political Code, sections 3834.20 to 3834.25, a public sale was held on April 11, 1940, at which petitioner Garvey made the highest bid. He bid less than the amount of the taxes that were delinquent when the property was deeded to the state, exclusive of penalties, interest and costs, but not less than the minimum price specified in the resolution of the board of supervisors approving the sale. Respondent, H. L. Byram, as Tax Collector of Los Angeles County refuses to issue a deed to Garvey on the grounds that Political Code, section 3834.25 (added by Stats. of 1939, ch. 529, sec. 2), does not contemplate a sale to the delinquent owner of the property for an amount less than the accumulated unpaid taxes, and that it could not be so construed without violating article XIII, section 1 of the California Constitution requiring all property in the state to be taxed in proportion to its value, and article IV, section 31, prohibiting the legislature from making or authorizing the making of any gift of any public money or thing of value to any individual.

Political Code section 3834.25 provides: "If the property is not redeemed before the sale, the tax collector shall sell the property at public auction to the highest bidder at the

time and place fixed in the notice of intended sale; but no bid shall be accepted for a sum less than the minimum price fixed in the resolution of the board of supervisors.'' The section contains no specific exclusion of bids by the former owner of the property.

Such an omission, however, cannot be interpreted as an authorization of such bids in view of the long established rule in this state that an owner who has held title throughout the period of tax delinquency cannot be a vendee at the tax sale. Whatever payment he makes to the tax collector in the course of a purported sale under such circumstances must be regarded as a payment of taxes and cannot serve to effectuate an actual sale that would convey to him title to the property. (*Moss* v. *Shear,* 25 Cal. 38 [85 Am. Dec. 94]; *McMinn* v. *Whelan,* 27 Cal. 300; *Coppinger* v. *Rice,* 33 Cal. 408; *Bernal* v. *Lynch,* 36 Cal. 135; *Barrett* v. *Amerein,* 36 Cal. 322; *Garwood* v. *Hastings,* 38 Cal. 216; *Reily* v. *Lancaster,* 39 Cal. 354; *Christy* v. *Fisher,* 58 Cal. 256; *Barnard* v. *Wilson,* 74 Cal. 512 [16 Pac. 307]; *Emeric* v. *Alvarado,* 90 Cal. 444 [27 Pac. 356]; *Gates* v. *Lindley,* 104 Cal. 451 [38 Pac. 311].)

''It is well settled that one who is under a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale made for such taxes. If such person permits the property to be sold for taxes, and buys it in, either in person or indirectly through the agency of another, he does not thereby acquire any right or title to the property, but his purchase is deemed one mode of paying the taxes.'' (*Christy* v. *Fisher,* 58 Cal. 256, 258; see, also, Black on Tax Titles, Second Edition, sections 273–274; Blackwell on Tax Titles, Fourth Edition, pages 443, 444.)

When a rule is so long engrained in the public policy of the state it must be presumed that the legislature took it for granted rather than sought to alter it in omitting any specific provision for its application. Thus, in the present situation the failure of the legislature to provide that bids are subject to the rule must be construed not as a rejection but as a tacit acceptance of the rule.

If a defaulting owner were allowed in effect to redeem his property through the simple device of submitting the highest bid at a tax sale, he could evade the conditions of redemption set forth in section 3817 of the Political Code, namely, the

payment, before the state shall have disposed of the property, of "the amount of taxes, penalties for delinquency, and costs due thereon at the time of such sale, and also all taxes that were a lien upon said real property at the time said taxes became delinquent; and also all unpaid taxes of every description which are a lien against the property, for each year since the sale, as shown on the delinquent assessment rolls. . . . " It is significant that Political Code, section 3817, was reenacted with minor amendments during the same legislative session in which Political Code, section 3834.25, was enacted and it is not plausible that the absence of a specific provision in the second should serve to destroy the effectiveness of the specific provisions in the first.

Political Code, section 3897, originally provided that bids had to equal at least twice the taxes plus interest, costs, and expenses. (Amendments to the Codes, 1873–74, p. 153.) When the legislature, commencing in 1905 (Stats. and Amend. 1905, pp. 31, 32; Stats. 1933, p. 2586; Stats. 1935, p. 1437; Stats. 1939, ch. 529, sec. 2), allowed lower minimum bids, it did not thereby enable defaulting owners to make such bids. Legislation that is concerned only with allowing a greater latitude in fixing the amount of the minimum bid cannot be construed to enlarge the field of bidders.

Petitioners seek to distinguish the cases cited above on the ground that they prevent a defaulting owner, not from becoming a vendee at a tax sale, but only from improving his title thereby through the elimination of other private interests. They advance the view that if his title is subsequently questioned by a private encumbrancer, the court should hold that the purchase "is in effect only a redemption." Such a view, however, is at variance not only with Political Code, section 3817, which sets forth the conditions of redemption, but with Political Code, section 3836.1, which provides that the tax collector's deed shall vest title in the grantee "free and clear of all encumbrances of any kind existing before the sale" except liens for future instalments of assessments, direct assessments, and taxes of a non-consenting tax agency. Faced with this clear statutory provision, petitioners maintain that should the defaulting owner become a grantee, principles of equity should prevail over the statutory provision to preclude his receiving a clear title. The court would thus be required not only to circumscribe the rule of the cases cited,

but to run counter to express statutory provisions in order to formulate a policy, which finds no express legislative sanction, that defaulting owners may bid at tax sales. It is for the legislature and not the courts to formulate such a policy.

The petition for a peremptory writ of mandate is denied.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Pullen, J., *pro tem.*, concurred.

CARTER, J., Dissenting.—I dissent.

I do not agree with the conclusion reached in the majority opinion or the reasons upon which it is based. I am convinced that the majority opinion entirely misconceives the purpose of the legislature in the enactment of sections 3834.20 to 3834.25 of the Political Code, and overlooks the serious consequences which will flow from the rule laid down therein. Abstractly stated, the majority opinion purports to hold that a person holding the record title to real property which has been assessed and the taxes permitted to go delinquent and the property sold to the state for delinquent taxes, cannot purchase said property from the state at delinquent tax sale even though he is the highest bidder at such sale. No legislative declaration is relied upon for this holding. On the contrary it is conceded that the statutes of this state create no prohibition whatever against a former owner becoming a purchaser of property at delinquent tax sale from the state under any circumstances.

The principal reason for the conclusion reached in the majority opinion is stated therein as follows:

"If a defaulting owner were allowed in effect to redeem his property through the simple device of submitting the highest bid at the tax sale, he could evade the conditions of redemption set forth in section 3817 of the Political Code. . . . "
That this reason is unsound and not a just or reasonable basis for discriminating against the owner of tax delinquent property in favor of a stranger to the title thereto, is to my mind obvious.

The majority opinion does not indicate the extent to which the prohibition against an owner of property to bid for the purchase of same at a tax sale may go; that is, whether such prohibition extends to all persons interested in the property or only to an owner in severalty who held the title thereto in

fee simple and to whom the property was assessed at the time of the tax delinquency. What the situation will be with reference to the owners of various interests in such property is not indicated. In other words, is a remainderman who is entitled to the fee after the termination of a life estate within the prohibited class? Is a conditional vendee under a contract of sale likewise within the prohibited class? Is a mortgagee or beneficiary under a trust deed covering the property in such prohibited class? Are the heirs or legal representatives of a deceased property owner in such prohibited class? Are trustees to whom property has been conveyed in trust in such prohibited class? Is the owner of property which has been erroneously assessed to another person in such prohibited class? Are persons entitled to future or conditional estates or interests in real property in such prohibited class? All of these and many other questions may arise to plague property owners and officials administering the tax laws as the result of the conclusion reached in the majority opinion.

Section 3780 of the Political Code provides that property sold for delinquent taxes may be redeemed by the owner or *any party in interest;* and section 3817 of the same code provides that such property may be redeemed by the owner, *his heirs, executors, administrators or other successors in interest.* If the reason given by the majority opinion for prohibiting an owner from purchasing property at delinquent tax sale is sound, then all other parties enumerated in the last mentioned sections of the Political Code who are given the right to redeem should likewise be prohibited from purchasing such property at delinquent tax sale.

But aside from the untoward consequences which will flow from the rule announced in the majority opinion, there are cogent and persuasive reasons why it was not the intention of the legislature by the enactment of sections 3834.20 to 3834.25 of the Political Code to preclude or prohibit an owner or person having an interest in real property from becoming a purchaser at delinquent tax sale of such property if he qualifies as the highest bidder at such sale.

I can perceive of no reason founded upon equity or justice or any consideration of public policy as a basis for the conclusion that such owner or person interested should not be permitted to become a purchaser of such property.

It is a matter of common knowledge that at the time of the enactment of the legislation in question many thousands of parcels of real property in this state had been sold to the state for delinquent taxes and had not been redeemed, and, in my opinion, there is no basis for any other assumption than that the reason for such tax delinquency was due almost entirely to the inability of property owners to pay their taxes because of the period of great financial stringency which has existed in this country since 1929. In other words, people lost their property on account of tax delinquency because they were financially unable to pay their taxes. This situation was recognized by the legislature of this state in the various tax moratorium statutes adopted between 1933 and 1939. It is also a matter of common knowledge that as a result of the great financial depression through which this country passed between 1929 and 1939, real estate values greatly decreased, and in my opinion it is a reasonable assumption that numerous parcels of land in this state were assessed for the purposes of taxation at the beginning of the depression at a value which would produce a tax for an amount in excess of the deflated value of that property during the period of the depression. For this reason owners who became financially able refrained from redeeming their property because to do so would require them to pay to the various taxing entities more than the fair market value of the property at the time of redemption; hence, the property remained unredeemed and it could not be sold under the law as it existed prior to the enactment of the Political Code sections authorizing the board of supervisors with the approval of the tax collector and the state controller to fix a minimum price at which such property could be sold less than the amount of delinquent taxes and penalties against it. Hence, in order to get the title to the property back into private ownership and restored to the assessment rolls, the legislature enacted the statutes here under consideration.

Conceding that it was the purpose and object of the legislature in the enactment of these statutory provisions to reinstate such tax delinquent property on the assessment rolls of the various taxing entities of the state, and that such provisions were not intended primarily for the relief of owners who had lost their property because of their financial inability to redeem it, I can nevertheless see no reason why an owner or

person interested in such property should not be accorded the same right as a stranger to bid at the delinquent tax sale of such property and acquire the title thereto pursuant to the statutory provisions above mentioned. In fact, I can see many reasons why the owner should be permitted to bid for the purchase of such property. He is obviously more familiar with the property and should have a better idea of its value and would be disposed to place a higher bid for the property than a stranger. Obviously, the taxing entities would profit in such event. Furthermore, since the taxing entities would receive no more money from the sale of the property whether it is purchased by the owner or a stranger to the title, considerations of public policy should favor the owner retaining the title to his property even though the sale to him is considered nothing more than a method of redeeming the property from delinquent tax sale. Even if the legislature had provided that the owner would not be permitted to become a purchaser of the property at delinquent tax sale, in my opinion there is grave doubt as to whether or not such provision would not be in violation of the equal protection clause of the 14th amendment of the Constitution of the United States. In other words, such provision would discriminate against a former owner of real property who should have the same standing as any other member of the public as a purchaser of the property from the state at delinquent tax sale.

The cases cited in the majority opinion commencing with the case of *Moss* v. *Shear*, 25 Cal. 38 [85 Am. Dec. 94]; to *Gates* v. *Lindley*, 104 Cal. 451 [38 Pac. 311], are not in point, as in none of these cases was the owner's right to bid for the purchase of his property at delinquent tax sale questioned by the officials administering the sale, and the title which the owner acquired as the result of such purchase was not attacked by the taxing entity. These cases simply hold that under well settled principles of equity jurisprudence a property owner cannot cut off junior lien claims against his property by permitting the taxes levied against it to become delinquent and then purchase the title from the taxing entity at delinquent tax sale to the detriment of such junior lien claimants. No question of this character is involved in the case at bar. The sole question involved here is whether or not when the legislature provided that the board of supervisors, with the approval of the tax collector and state controller fixed the minimum amount at which tax delinquent property

could be sold by the state to the highest bidder, it thereby intended to preclude the owner of the property at the time of the delinquency from becoming a purchaser at such sale even though he was the highest bidder for such property.

To my mind, it is improbable and contrary to human instincts and inclination to say that to permit an owner to become a purchaser at delinquent tax sale would tend to encourage tax delinquency because it would encourage owners to let their taxes go delinquent with the intention and design of purchasing the property at delinquent tax sale and evading the payment of a portion of the tax burden which had accrued against their property. In my opinion, no reasonably prudent person would run the risk of losing his property as the result of such a procedure in order to avoid the small saving which might result therefrom. My experience as a member of the bar for more than twenty-five years and as attorney for counties, cities and other taxing entities in dealing with problems of this character convinces me that there is no basis for an argument of this character and it affords no sound reason for the conclusion reached in the majority opinion.

It seems much more reasonable and logical to me to conclude that in fixing the minimum amount at which property sold to the state for delinquent taxes could be purchased, the tax collector and board of supervisors would take into consideration the fair market value of the property and fix such amount as in their judgment a prospective purchaser would be justified in paying therefor in view of the changed conditions as to market value since its sale to the state, and since the former owner has nothing to say about the amount so fixed, and the taxing entities are benefited because his bid is higher than all others, it is impossible for me to see how it can be claimed that the taxing entities are in any way injured or that it is not in the public interest to permit the owner to become a purchaser at such sale.

It can be appropriately stated that the situation here presented is "a condition not a theory," and that its solution requires the application of nothing more than a little common sense. If the legislature had intended to prohibit the owner from bidding, it would have said so, and this court has no authority to write anything into a statute which the legislature has omitted therefrom. (Code Civ. Proc., sec. 1858.) Is it not much more reasonable to assume that the legislature in-

tended, by its failure to prohibit the owner from bidding, to thereby afford him an opportunity to regain title to his property without being required to pay more than it is worth in order to redeem it? I am forced so to conclude.

Respondent contends that to permit an owner to purchase his property at delinquent tax sale for less than the full amount required to redeem the property would constitute a gift of public money, and an interpretation of section 3834.25 which would permit such owner to purchase his property at delinquent tax sale would render said section unconstitutional as being in violation of article IV, section 31 of the Constitution of California. Section 31 of article IV restricts the legislature from making any gift or authorizing the making of any gift of any public money or thing of value to any individual, etc., but the above mentioned section of the Political Code does not make or authorize the making of a gift to the owner of real property which has been sold to the state for delinquent taxes by permitting him to become a purchaser at the delinquent tax sale of said property. In the case at bar the state has by foreclosure acquired title to Garvey's land. The Political Code sections in question authorize the sale of this land at a price not less than that fixed by the tax collector, approved by the board of supervisors and the state controller. Any member of the public has the right to bid for the purchase of this land at the delinquent tax sale thereof. Garvey placed the highest bid for the land, which means that the taxing entity received more for the land than if he had not bid. Obviously, any member of the public had the right to purchase this property if he placed a higher bid than that submitted by Garvey. In either case the tax lien is extinguished by the sale of the property. It is presumed that the highest bidder paid all that the property was worth at the time of the sale. Therefore, the state was not giving Garvey anything by permitting him to bid more for the property than any other member of the public was disposed to bid for it. Under such circumstances it cannot be said by any stretch of the imagination that the state gave Garvey anything or that the state lost anything by permitting him to bid more for the property than anyone else was disposed to bid.

Respondent also contends that a sale to a record owner for less than the amount of delinquent taxes would constitute nonuniform taxation in contravention of article XIII, section

1 of the California Constitution. The first sentence of said section reads as follows:

"All property in the State except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided." While this section provides for uniformity of taxation and not for uniformity in collection of taxes, it must be conceded that if a statutory system of taxation were devised whereby all property would be uniformly taxed in the first instance and thereafter certain classes of property were favored in the matter of tax collection resulting in substantial variation in the amount collected, such system of taxation would violate the above quoted constitutional provision. That, however, is not the situation here. The property of no particular person or no particular class is singled out for different treatment, but all are subjected to precisely the same statutory method of taxation and collection. That one person is enabled in a particular instance to discharge his tax lien for less than his neighbor does not change the situation. The primary obligation of real property taxation in this state is not upon the person but upon the property. Since 1933 there has been no enforceable personal obligation for taxes against the owner of real property. In that year section 3899 of the Political Code was repealed and in the same year section 3771 was amended so as to provide as follows:

"Provided, further, that no suit shall be brought against the owner or person in possession of said property to recover any taxes, assessments, penalties or costs if said property is real property."

Thus, in applying the constitutional provisions above mentioned, we should disregard the person to whom the property is assessed and consider only the property taxed. Considered in that light, there is no difference between permitting the record owner or possessor to purchase the property at tax sale for less than the amount of the tax lien and permitting an entire stranger to do the same thing. In either event the property bears the same tax burden. In either event the taxation of property is equally either uniform or nonuniform. Since it must be conceded that a stranger may purchase at delinquent tax sale for less than the amount of extended

taxes, there can be no violation of article XIII, section 1 of the Constitution in permitting a record owner to do likewise.

For the foregoing reasons I am of the opinion that a peremptory writ of mandate should issue requiring respondent to execute and deliver to petitioner Garvey a deed conveying the title of the property in question to him.

Petitioners' application for a rehearing was denied August 21, 1941. Houser, J., and Carter, J., voted for a rehearing.