[Civ. No. 4889. Fourth Dist. July 13, 1955.]

SARAH GIPSON, Respondent, v. ROBERT L. SPEARS, Appellant.

Vincent Whelan for Appellant.

Higgs, Fletcher & Mack for Respondent.

GRIFFIN, J.—Plaintiff originally brought this action in the usual conventional form against defendant to quiet her title to a certain parcel of property in the La Mesa, Lemon Grove and Spring Valley Irrigation District. In an amended complaint plaintiff realleges this claim and specifically alleges that by deed of August 11, 1952, the collector of the irrigation district deeded the property to the district, and that by deed of August 26, 1952, the district deeded it to defendant and that such deeds were invalid for certain assigned reasons. Plaintiff then claimed in paragraph VI that defendant conspired with one John A. C. Austin, and they fraudulently prevented plaintiff, the owner of the property since April 19, 1951, from receiving notice of tax assessments and tax delinquencies, and accordingly defendant acquired no title to the property by reason thereof.

Defendant denied generally these allegations and set up several claimed defenses. The trial court found that these deeds were not invalid for the reasons claimed, but found that the allegations of paragraph VI were true, and that John A. C. Austin and Alta M. Austin induced the defendant to permit a tax deed to the property to be taken in his name in order to terminate the interest of the plaintiff in the property without redeeming it, and accordingly concluded

that the purchase of the tax deed by defendant, acting in behalf of the Austins, was nothing more than the payment of the delinquent irrigation district taxes, and quieted plaintiff's title thereto. Judgment was entered accordingly and defendant appealed.

The evidence shows that prior to June 26, 1948, Mrs. Austin owned a piece of land which was divided into two parcels, which we will refer to as A and B. A is the property here involved. On June 26, 1948, parcel A was sold under writ of execution on a judgment against Mrs. Austin. The day before the period of redemption was to expire Mrs. Austin, who had been having "money difficulties," prevailed on plaintiff to pay about $557.21 to the creditor and plaintiff took an assignment of the creditor's right in and to the property and plaintiff extended Mrs. Austin's right of redemption for another six months under some oral agreement between them that she would be repaid that amount during that period. The sheriff's deed to plaintiff was dated April 9, 1951, and recorded April 19, 1951. Plaintiff testified that she paid the state and county taxes in the fall of 1952, and assumed that Mrs. Austin had paid all other taxes since the property was assessed in her name up to 1953; that she never received any notice of, nor did she have any knowledge that any irrigation district taxes were due on the property until September 1, 1952, when she endeavored to sell that propety; that she learned defendant Spears had purchased it through a delinquent irrigation district tax sale for $22.29; and that she later contacted him and that he agreed with her, being the record owner, that she should have received some notice in reference to the taxes due; that she asked him about making some sort of a settlement and that she agreed to repay the taxes paid by him; that he stated he would think it over and call her; that he failed to call and she later reached him; and that he then stated he had decided to keep the property.

The irrigation district records show that in 1953, it was assessed to plaintiff; that prior to that time it was assessed to Mrs. Austin, and that statements of delinquent taxes were mailed to Mrs. Austin at her address.

Some person who identified himself as Mr. Spears inquired about the delinquency in August, 1952, and he was informed that it had been deeded to the district and was subject to sale for such tax. Apparently this person was not Mr. Spears.

It appears from the record that Mr. and Mrs. Austin sepa-

rated in November, 1950, and on September 17, 1951, he alleged in a divorce action against her that parcels A and B were community property of the Austins and that plaintiff here and one Mason, joined as defendants in the divorce action, conspired with Mrs. Austin to deprive Mr. Austin of his community interest in that property, and claimed that Mrs. Gipson held the property as trustee for the Austins. In January, 1952, a written property settlement agreement was entered into between the Austins and Mrs. Austin quit-claimed to Mr. Austin all her interest in the above-mentioned property in consideration of a specific sum of money. The divorce feature was heard as a default. However, after trial on the other issues the trial court held that the property was not Mr. Austin's community property, and Mrs. Gipson was declared to be the owner of parcel A. (Parcel B had previously been sold by her.)

In the instant action defendant testified he had known Mr. Austin all his life, had roomed with him for several years, and they were very close friends; that he knew Austin had previously tried to obtain this property in the divorce action; that some time after the issuance of the tax deed to the district Austin informed him that the district had a deed to the property here in question. He denied he bought the tax deed for Austin. He said he did not inquire about it at the tax office but dealt through his attorney, who was also attorney for Austin in the divorce action. His attorney, called as a witness for the plaintiff, testified that the money for the purchase of the property was paid into his office but he would not say whether Austin or Spears paid it to his secretary. When asked whether he had any dealings with Austin to purchase this property from the district for Austin he claimed attorney and client privilege, and refused to answer unless Austin released him from the privilege. An attempt was made to serve Mr. Austin with a subpoena on several occasions, but he could not, for some rather suspicious reasons, be found. Defendant's attorney admitted, however, that he paid the tax for the deed by his own office check and refused to produce his receipt book indicating who paid the money to him for the purchase of the property. Spears testified he paid the money to the attorney. From the evidence produced and from these circumstances the court might well infer that Spears was acting for his life-long friend Austin in the transaction, and that defendant had no real interest in the property but was holding it for the Austins.

(*Garvey* v. *Byram,* 18 Cal.2d 279 [115 P.2d 501, 136 A.L.R. 1137].)

The court also found that the allegations of plaintiff's complaint were true and found generally in favor of the plaintiff; that it was not established that the tax deeds were void, and found as true that the Austins "induced the defendant Robert L. Spears to permit a tax deed to" the property involved to be taken in his name in order to terminate the interest of the plaintiff in the property without redeeming it, and concluded that the purchase of the tax deed by defendant Spears, acting in behalf of the Austins, was, in equity, nothing more than the payment of the delinquent irrigation district taxes.

On December 9, 1953, the trial judge signed a memorandum opinion in which he recites that the evidence convinced him that in March, 1952, the Austins agreed that Mrs. Austin would quitclaim to Mr. Austin her alleged interest in the property; that contrary to their claim that it was community property, the trial court found in the divorce action that Mrs. Gipson was the owner of it; that thereafter, a person representing himself as Spears, made arrangements through Austin's attorney to obtain a deed to the property; that notices of the delinquent tax assessments were sent out by the district and received by the Austins, but they were not forwarded to plaintiff nor was she told of them; that when the Austins arrived at their settlement in the divorce action they must have been completely aware of the manner in which the property was held; that they made no attempt to redeem the property and accordingly the Austins induced Spears to permit a tax deed to be taken in his name in order to terminate the interest of plaintiff in the property without redeeming it; and that the Austins joined forces in seeking to destroy plaintiff's interest. The court concluded that these facts bring the case within the holding of *Garvey* v. *Byram,* *supra,* and accordingly the procuring of the tax deed by the Austins through defendant Spears was, in equity, but the payment of the taxes, and title should be quieted in favor of plaintiff upon depositing in court for defendant the sum of $22.29, the amount paid for the tax deed.

Further consideration was given to this point on a motion for new trial and the judge again reviewed the evidence. Defendant there contended that there was no contractual relationship between plaintiff and the Austins and accordingly the Austins were at liberty to obtain a tax title to the

property themselves. In disposing of this contention the court said the evidence shows that plaintiff purchased the certificate of sale at the request of Mrs. Austin and had orally extended to her the privilege of redeeming the property, and that Mrs. Austin, as part of the consideration, had agreed to keep up the taxes; that these taxes were not paid by her and the Austins knew of the delinquencies but failed to notify plaintiff of this fact; that accordingly, there was a duty imposed upon the Austins to pay the tax or notify plaintiff of the delinquency; that they failed to do this and accordingly the Austins, in equity, could not take advantage of their own default occasioned by their neglect or failure.

It is defendant's claim that the findings go outside the issues raised by the pleadings; that certain rulings were erroneously made as to the admissibility of certain evidence; that the evidence does not support the findings; and that the judgment is contrary to law, citing such authorities as *Willard* v. *Glenn-Colusa Irr. Dist.*, 201 Cal. 726, 735 [257 P. 959]; *Freeman* v. *Superior Court*, 44 Cal.2d 533 [282 P.2d 857]; *Rotea* v. *Rotea*, 93 Cal.App.2d 827, 832 [209 P.2d 963]; and section 26307, Water Code, and related sections.

In this connection it is argued that there is no mention in the complaint that plaintiff did not know the property was subject to irrigation district taxes; that no such finding should have been made because defendant offered in evidence certain documents in the escrow agreement in reference to the sale of parcel B by plaintiff on April 19, 1951, in which it is indicated that there were delinquent assessments on that property for the years 1948, 1949, 1950 and 1951, and that plaintiff must be considered to have had notice of that fact because these assessments were paid through the escrow by the title company. A casual observation of the pleadings warrant the findings made upon the issues therein presented (22 Cal.Jur. p. 152, § 32) and the question of notice was a factual question. The court allowed in evidence a conversation between plaintiff and Mrs. Austin as to who was to pay the taxes on the property during the redemption period. Defendant objected to this conversation as hearsay because it was not made in his presence. ▮ The charge was that defendant conspired with Austin to obtain title to the property. The findings rather indicate that Mrs. Austin was a coconspirator in this respect. Accordingly, the conversation was admissible. (5 Cal.Jur. p. 525, § 27.) Our conclusion is that the evidence supports the findings and the judgment

and that the judgment is not contrary to law. It is a general provision of law in equity that no one can take advantage of his own wrong. (Civ. Code, § 3517.) Under this rule it has been held that where a mortgagor is under obligation to pay the taxes, the act of such party acquiring title through his own default is held to be fraudulent, and the mere failure of the mortgagee to pay the taxes is not laches which the mortgagor can take advantage of. (Jones on Mortgages, 8th ed., sec. 841; and *McKinnon* v. *Bradley,* 178 Ore. 45 [165 P.2d 286].)

In *Garvey* v. *Byram, supra,* p. 281, it is said, quoting from *Christy* v. *Fisher,* 58 Cal. 256, 258:

"It is well settled that one who is under a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale made for such taxes. If such person permits the property to be sold for taxes, and buys it in, either in person or indirectly through the agency of another, he does not thereby acquire any right or title to the property, but his purchase is deemed one mode of paying the taxes."

See also 85 Corpus Juris Secundum 140, section 809, paragraph h. █ A disqualified person is not allowed to acquire a valid title to land sold at a tax sale by procuring another to purchase the tax title for him. (85 C.J.S. pp. 142-143, § 809, par. j.) █ Under these authorities and the general finding of conspiracy to defraud plaintiff of her title to the property, it must be held that there is support for the judgment. No prejudicial error appears as a result of the order denying a new trial.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied August 5, 1955, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1955.