[Civ. No. 5158.   Fourth Dist.   July 11, 1956.]

RAY S. CARBERRY, Appellant, v. HAZEL M. TRENTHAM, Respondent.

Whitelaw & Whitelaw for Appellant.

Horton & Knox for Respondent.

GRIFFIN, J.—Defendant and respondent and her late husband, Max Trentham, were named as defendants in a complaint filed by plaintiff and appellant (who is now 82 years of age) wherein plaintiff sought to recover for alleged payments due and money advanced to defendants in payment of certain acreage in Imperial County, and taxes due. A bar by the statute of limitations precluded recovery on this theory. In a third amended complaint plaintiff alleged that on February 1, 1918, he was the owner of 90 acres of land and, on that date, sold it on contract to defendants for $6,500, payable in installments of $1,000 yearly, plus interest at 7 per cent. The purchaser agreed to pay all taxes and assessments before delinquency. This contract was not recorded until January 25, 1952. (Mrs. Trentham did not sign the contract and claimed she knew nothing about its terms.) It then provided that if vendee failed to pay any installments, interest or taxes before delinquent, then, during the continuation of such default, vendor, at his option, might terminate the contract. Defendants went into possession at that time and became in default after two installments had been paid. No interest was paid after August 1, 1923, and taxes levied on the property were not thereafter paid by defendant. It appears that plaintiff advanced defendant, Mr. Trentham, several hundred dollars to pay delinquent

taxes up to that time. The evidence shows that the property was infested with ''Camelthorn weed'' and authorities prohibited the use of a great portion of the land for crops and grazing for fear of spread of the pest. Defendants were unable to farm it to any extent but did live upon it and used it to raise hogs. The property greatly deteriorated in value as the infectious weed increased. The authorities entered upon the land and for over ten years fought the existence of the weed. Apparently, plaintiff, who then resided elsewhere, knew of the prevailing conditions but no action was taken by him, due to his friendship to Mr. Trentham, to dispossess defendants or to reclaim his property from them or to pay the delinquent taxes.

Plaintiff and Mr. Trentham were formerly employed by the Imperial Irrigation District and had great confidence in each other. Plaintiff claims he relied on defendant's honesty in paying his obligations when able to do so and, accordingly, no action was taken by him. The district took title to the property in 1931 and in 1936 for delinquent taxes, and the Trenthams remained in possession of it. This property was sold by the district in May, 1940, and Mr. Trentham was the purchaser at such sale. There was a similar sale by the state and the tax title was secured by him on June 15, 1943. On July 2, 1943, he created a joint tenancy to this property with his wife. Mr. Trentham died before trial of the action. No claim was filed in his estate. The administrator was not substituted as a party defendant. Plaintiff alleged he had no knowledge of the tax deeds and subsequent deeds mentioned until January, 1952.

Plaintiff now claims, on the filing of the action on August 21, 1952, he terminated the contract of purchase. He seeks recovery of the property and to have a declaration that defendant, Mrs. Trentham, holds the property in trust for plaintiff's benefit. He also prays for possession, and to have title quieted in him. In a second claimed cause of action he alleges, by reason of the conduct of the parties, defendants waived the right to enforce the statute of limitations against him, if applicable, alleges the death of Mr. Trentham, and that Mrs. Trentham alone claims title by reason of the joint tenancy deed.

Defendant Hazel M. Trentham (hereinafter referred to as defendant), in answer to the third amended complaint, denies generally the allegations contained therein and alleges that the action is barred by the statute of limitations; that

defendants were in adverse possession of the property and paid taxes thereon for more than five years, and claims title by prescription; that plaintiff's claim to the property is unjust because the property was partially infested with the weed at the time of the signing of the contract, was quarantined and could not be farmed; that it was worthless and the taxes and assessments exceeded its value; that the infestation has been practically eradicated; that the land is now level and has been almost freed of alkali by extensive drainage and other improvements and is now improved with feeding pens and outbuildings, all totaling in value in excess of $60,000; that to forfeit the property under plaintiff's claim would be inequitable and unfair and amount to unjust enrichment after standing by and permitting these improvements without protest or previous claims

The court found generally in favor of defendant and particularly found that plaintiff had no actual knowledge, as such, of the tax deeds and subsequent deeds until January, 1952, but did know, in 1943, that the taxes on the property were delinquent and knew the legal consequences; that it was not true that defendant did know of the contract and defaults which had occurred thereunder; that there was no waiver of the statute of limitations in the contract as to foreclosing the purchaser's interest in event of default; that defendant also acquired title by adverse possession; that in 1943 the fair market value of the property did not exceed $4,500 and at the time of the trial it had been improved to a value in excess of $50,000; that since 1943 plaintiff had knowledge of facts which should and would place a reasonable man on inquiry as to whether his right in the property had been adversely affected; that it would be unfair and unjust enrichment to now forfeit the property to plaintiff; that plaintiff has been guilty of laches in failing to assert his claim; that his claims are barred by the statute of limitations (Code Civ. Proc., §§ 318, 337 and 343) and that defendant is not estopped from setting up the defenses urged. Judgment was accordingly entered against the plaintiff.

The first question to determine is whether the action was barred by the statute of limitations as indicated. The contract of purchase recites in part that vendee agrees to buy from vendor the property involved for $6,500, as indicated, and vendee, during the life of the contract, is entitled to possession, subject to the conditions of it; that if vendee pays said purchase price and taxes within the terms and manner

aforesaid, vendor will execute and deliver a deed, but if vendee fails, "then at any time thereafter during the continuance of such default or violation, the vendor, at his option, may terminate this contract, time being the essence of this contract, and thereupon the vendor shall be entitled to the possession of said property and the vendee shall have no further rights or equities in the premises or under this contract, or to the moneys theretofore paid to the vendor."

Plaintiff concedes that an action to recover the advance tax loans and balance due under the contract would be barred by said statute but claims that the provision above quoted was tantamount to and operated as an agreement by the parties to waive the application of the statute of limitations insofar as plaintiff's right to declare a default and recover possession of the property is concerned. He relies upon such authority as *Hasman* v. *Canman,* 136 Cal.App. 91 [28 P.2d 372] and *Atlas Finance Corp.* v. *Kenny,* 68 Cal.App.2d 504 [157 P.2d 401] to the effect that such a statute may be waived for all time. We conclude that under the provisions of the contract and the evidence no statute of limitation applied. The Trenthams were in possession all of these years by virtue of this agreement. At least the plaintiff believed so. As late as March 13, 1943, defendant's then attorney, Mr. Williams, wrote plaintiff at Reno, Nevada, that he tried to learn of plaintiff's whereabouts for some time; that the Trenthams sent best wishes; that the state passed a law which allowed it to collect rent from occupants of tax delinquent land and were endeavoring to collect rent from them and this "necessitates Mack getting title to his land in some manner." He asked plaintiff to send a quitclaim deed to him and enclosed a $1.00 check for notary fee. Plaintiff answered and returned the check with the statement that he "positively and absolutely will not sign a quitclaim deed without material consideration"; and that Trentham entered into a valid contract for the purchase of this property; that "he has been in possession of same probably since 1918 and still owes $2,800 (sic.) ($5,800) on the purchase price, plus a $600.00 loan and taxes which I paid. Therefore, I feel that I should have a little consideration for past favors and not insisting that he fulfill his contract or move. I would be receptive to taking the property back, cleaning up back obligations, and starting over." It therefore affirmatively appears that plaintiff did not abandon the contract. Plaintiff did not exercise his option to terminate the con-

tract and accordingly, no cause of action to recover possession or declare a forfeiture accrued. Vendor was not entitled to possession until he had exercised this option. It was not until plaintiff filed his complaint on August 21, 1952, that he declared therein that he terminated the contract. No demand was made upon the vendee for the payments and no tender of a deed was made by plaintiff. Plaintiff was not in default and the court so found. It also found that the default of defendant was "continuous and unrelieved" and "not cured."

▮ It is the general rule pertaining to contracts that a condition that the title shall be made, or the price shall be paid, on or before a day named, may be waived by the party entitled to performance at the day, or if he goes on treating the agreement as still binding after default has been made, he cannot afterwards turn around and set up the delay or default as creating a forfeiture and, therefore, a defense. (Pomeroy on Contracts, § 337.) ▮ After forfeiture for default has been waived, time becomes essential thereafter only where the vendor makes it so by proper notice and demand. The decisions proceed upon the theory that the vendor cannot use his own indulgence as a trap in which to catch the purchaser. (39 Cyc., p. 1384; *Lifton* v. *Harshman,* 80 Cal.App.2d 422 [182 P.2d 222]; *Thein* v. *Sticha,* 93 Cal.App.2d 295 [209 P.2d 13]; *Boone* v. *Templeman,* 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126]; *Uren* v. *Troup,* 110 Cal.App.2d 419 [242 P.2d 895].)

Plaintiff came back to the valley in 1935, had dinner with the Trenthams, and no mention was made that defendants did not intend to perform the contract according to its terms. It should be here noted that defendant thereafter secured a tax deed from the irrigation district and the state, but no mention was made to plaintiff of these facts. It appears that it was not until January, 1952, when plaintiff actually discovered this fact and this action was soon commenced. We must then conclude, notwithstanding the findings of the court to the contrary, that the action was not barred by the statute of limitations and that the contract was not abandoned. Plaintiff was under no legal obligation to exercise his right to a forfeiture and recover possession under the contract.

▮ Since there was a waiver of the statute of limitations in the contract signed by the husband, it would also constitute a waiver by the wife insofar as her rights to the property under it would be concerned. (Civ. Code, §§ 172, 172a; 47

A.L.R. 1016; 47 A.L.R. 545; 11 Am.Jur., Community Property, § 64.)

The defense of laches is a creature of equity and is a species of equitable estoppel. It should not be applied where the result would be inequitable and unjust without making adequate equitable provision in its application. (*Brownrigg* v. *De Frees,* 196 Cal. 534 [238 P. 714] ; *Neet* v. *Holmes,* 25 Cal.2d 447 [154 P.2d 854] ; Bigelow on Estoppel, 484.) It was held in *Trail* v. *Firth,* 186 Cal. 68 [198 P. 1033], that laches is a defense which may be interposed to a suit in equity, whereby the plaintiff will be refused equitable relief because of his delay in bringing his suit, although the suit is commenced within the statutory period of the limitation. Here, it affirmatively appears that plaintiff was lulled into a false sense of security that if a forfeiture was not declared, Trentham would eventually cure the default and obtain title by virtue of the deed mentioned in the contract. Instead, Trentham endeavored to circumvent the provisions of the contract and secure title by means of a tax sale brought about by his own failure to pay the taxes which he solemnly agreed to pay. Insofar as the action possesses the essential characteristics of the old legal action of ejectment, it is an action at law and not in equity and the defense of laches would not ordinarily be available. However, insofar as equitable relief is sought, this defense is available. (*Southern Pac. Land Co.* v. *Dickerson,* 188 Cal. 113 [204 P. 576] ; *Ohanian* v. *Kazarian,* 123 Cal.App. 196 [11 P.2d 42] ; *Doherty* v. *Courtney,* 150 Cal. 606 [89 P. 434].) The defense of laches, therefore, should not be applied in this case unless, in furtherance of equitable relief, provision is made as a condition precedent that the Trenthams have a reasonable opportunity to fulfill their contract and make the payments required, together with interest thereon, as provided in the agreement. In *Mayer* v. *West,* 96 Cal.App. 31, 36 [273 P. 849], it is held that a vendee who appeals to a court of equity to defend him against the legal title to land, of which he is in possession, must do equity by paying or offering to pay the price which he agreed to pay. It cites *Woodard* v. *Hennegan,* 128 Cal. 293 [60 P. 769], where it is said:

" 'The defendant having by his answer repudiated the contract, and having refused to pay the balance due, the plaintiff can maintain the present action to recover possession. . . . The defendant could have set up in his answer the agreement to convey, his willingness to perform, and offer

to perform on his part by paying the balance found to be due, and the court, by its decree, could have, while giving the plaintiff the amount due, also fully protected the rights and equities of defendant.'" (See also *Trail* v. *Furth, supra,* 186 Cal. 68.)

It is a fundamental rule that a vendee in possession of land under an executory contract for its purchase at a tax sale cannot set up the title so acquired against his vendor, particularly where he has stipulated to pay the taxes. (85 C.J.S., Taxation, § 809g.) A vendee may purchase the land at a tax sale where the vendor has accepted a surrender of a formal contract to sell or where the contract has terminated prior to the tax sale. Neither husband nor wife can obtain a tax title in opposition to the other when they are in joint possession. The husband, while in joint occupancy with his wife, cannot acquire a tax title valid as against her. Where some member of the family or other confederate of the owner of land acquires a tax deed thereto from the state or other taxing agency, equity will examine the transaction to see whether it was a fraudulent conveyance, and, if it is ascertained to be such, the grantee will be held a trustee, or the entire transaction will be held a redemption by the original owner. (85 C.J.S., Taxation, § 809d et seq.) See also *Gipson* v. *Spears,* 134 Cal.App.2d 370, 376 [285 P.2d 968], citing from *Garvey* v. *Byram,* 18 Cal.2d 279 [115 P.2d 501, 136 A.L.R. 1137], and quoting from *Christy* v. *Fisher,* 58 Cal. 256, 258, it is said:

" 'It is well settled that one who is under a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale made for such taxes. If such person permits the property to be sold for taxes, and buys it in, either in person or indirectly through the agency of another, he does not thereby acquire any right or title to the property, but his purchase is deemed one mode of paying the taxes.' " (See also *Garvey* v. *Lashells,* 151 Cal. 526 [91 P. 498] ; 25 Cal.Jur. 689, 690.)

Under this theory Mr. Trentham did not, as against plaintiff, acquire title to the property by the tax sales and, accordingly, no title, greater than that possessed by him, passed to the defendant wife by virtue of the joint tenancy deed; at most, she holds it subject to the trust. (See 26 Am.Jur., Husband and Wife, § 127 ; *Jarkieh* v. *Badagliacco,* 75 Cal.App.2d 505 [170 P.2d 994] and Civ. Code, § 2224.)

The attempted enforcement of the trust was begun in

August, 1952, a few months after actual discovery of the wrongful taking of legal title. Under these circumstances, the action was not barred under section 338, subdivision 4, or section 343 of the Code of Civil Procedure. (*Calkins* v. *Calkins,* 63 Cal.App. 292 [218 P. 611] ; *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154 [168 P.2d 946] ; *Gilbough* v. *Runge,* 99 Tex. 539 [91 S.W. 566, 122 Am.St.Rep. 659].)

▮ The finding that defendant acquired title by adverse possession is not substantially sustainable from the record. In *Kerns* v. *McKean,* 65 Cal. 411 [4 P. 404], where the vendee enters into possession under his agreement of sale, there can be no hostile possession by him unless it was clearly manifested to his vendor by unequivocal acts. The element of the adverse possession is a prerequisite. (*Thomas* v. *England,* 71 Cal. 456, 458 [12 P. 491].) There was no apparent repudiation of the contract by the Trenthams or by plaintiff and possession would not become adverse until such repudiation was brought home to the parties. (2 Cal.Jur.2d, Adverse Possession, § 25; *Kerns* v. *Dean,* 77 Cal. 555, 559 [19 P. 817] ; 1 A.L.R. 1329; *Gilbough* v. *Runge, supra,* 99 Tex. 539 [91 S.W. 566, 122 Am.St.Rep. 659].)

▮ Under section 1213 of the Civil Code the recordation of a conveyance is constructive notice to subsequent purchasers and mortgagees only. Under the facts established, Mr. Trentham acquired no title by the tax deeds and accordingly, must have been in possession of the property under the contract of sale. ▮ Defendant, Mrs. Trentham, may not rightfully claim she acquired title by virtue of the tax deeds. Accordingly, she would not be protected under the statute of limitations provided in section 318 of the Code of Civil Procedure. (*McKelvey* v. *Rodriquez,* 57 Cal.App.2d 214, 223 [134 P.2d 870].)

A new trial should be had and, if necessary, the pleadings should be amended and any indispensable parties necessary to render a judgment in accordance with the equities indicated should be added.

The judgment is reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied July 31, 1956.