[Civ. No. 12555.   First Dist., Div. Two.   Nov. 1, 1943.]

FREDERICK H. DINKELMAN, Appellant, v. RUTH E. HARRISON, as Administratrix, etc., et al., Respondents.

Hawkins & Hawkins, J. W. Hawkins and J. Lee Robertson for Appellant.

H. K. Landram for Respondents.

SPENCE, J.—Plaintiff sought to quiet his title to a parcel of land in Merced County and he appeals from a judgment in favor of defendants.

The material facts are undisputed. All parties are agreed that in 1929, title to said parcel was in Edith G. Elliott, now deceased. In that year, Edith G. Elliott and her husband George P. Elliott, also now deceased, executed a note in the sum of $2,500 in favor of plaintiff and also executed a mortgage covering said parcel to secure the payment of said note. The note was payable one year after date and the mortgage provided "Mortgagor shall pay all taxes, assessments and incumbrances on said property . . ." Edith G. Elliott died intestate in 1933, leaving as her heirs her husband, George P. Elliott, her son George E. Elliott and her daughter Ruth E. Harrison. No personal representative was appointed until 1938, when Ruth E. Harrison was appointed administratrix of the estate of Edith G. Elliott, deceased. In due time plaintiff presented his claim upon said note and mortgage but said claim was rejected by the administratrix. Thereupon plaintiff brought an action to establish his claim and to foreclose said mortgage. In that action plaintiff had judgment and he became the purchaser of the property upon the foreclosure sale, receiving the commissioner's deed in 1940. George P. Elliott, the surviving

husband, who had signed the note and mortgage, was made a party to said foreclosure action but his demurrer, pleading the statute of limitations, was sustained. The statute had not run, however, in favor of the administratrix. (Code Civ. Proc. sec. 353.) George E. Elliott, the surviving son was also made a party to said foreclosure action. He claimed title to said property under a tax-deed, said claim being based on the facts hereinafter set forth. The trial court made no findings in the foreclosure action with respect to George E. Elliott's claim of title, holding that it had no jurisdiction to try title in such action. Said action was therefore dismissed as to George E. Elliott without prejudice to the rights of any of the parties. George P. Elliott, the surviving husband, died in 1941 and Ruth E. Harrison was appointed administratrix of his estate. Thereafter this action to quiet title was brought against said Ruth E. Harrison, individually and as administratrix of the estate of George P. Elliott, deceased, and also against George E. Elliott, the surviving son.

The controversy in the present action arises over the claim of said defendants that title to the property was in said George E. Elliott. The facts upon which that claim is based may be briefly stated. In 1932, and during the lifetime of Edith G. Elliott, said Edith G. Elliott and her husband George P. Elliott, as mortgagors, failed to pay all taxes and assessments as required by the terms of the mortgage. As a result the property was sold to the Merced Irrigation District on August 23, 1932, and later, after the period for redemption had expired (California Irrigation District Act, sec. 47, Stat. 1931, p. 440), the collector of the district, deeded said land to the Merced Irrigation District. Said deed was dated February 7, 1936, and was recorded on February 20, 1936. On February 17, 1936, George P. Elliott, the surviving husband, wrote to the directors of the district offering to purchase the property saying, "I will pay all taxes against the property including your expenses." Thereafter the board accepted the offer specifying the amount to be paid to the district as $379.92. This amount was paid by George P. Elliott and a deed from the district to George P. Elliott was executed and recorded in January 1937. In November of that year, George P. Elliott took the deed to the county recorder, told him that a mistake had been made in the deed and requested him to change the deed and the record so that George E. Elliott rather than George P. Elliott would appear as the grantee therein. The recorder, apparently being in an ac-

commodating frame of mind, changed the deed and the record as requested. While plaintiff contends that this change of the grantee's name could not have vested title in George E. Elliott, who was decreed by the trial court to be the owner of the property, and while defendants make no reply to this contention, we believe that the discussion of the contention is unnecessary in view of the conclusions which we reached.

Plaintiff contends that neither the mortgagor, nor those claiming under the mortgagor, may buy in a tax title and assert it successfully against the mortgage or the title acquired through foreclosure of the mortgage. In our opinion, this contention must be sustained. There is an abundance of authority sustaining this general proposition and the cases have been collected and discussed in a note found in 134 A.L.R. at page 289. The reasons for the rule have been variously stated. In those cases involving controversies between mortgagors and mortgagees, which cases are numerous, the courts have usually contented themselves with stating that the mortgagor could not assert a tax title against the mortgagee for the reason "that it is the duty of the mortgagor to keep the taxes paid and that he cannot be allowed to derive an advantage from his own wrong in permitting them to go unpaid. " (134 A.L.R. 292.) The duty of the mortgagor to pay the taxes, referred to in such cases, was based upon the personal obligation imposed by the terms of the mortgage or by statute. But the rule has been quite generally applied against those claiming under the mortgagor such as purchasers (134 A.L.R. 303) ; or junior lien holders (134 A.L.R. 297) ; or heirs or devisees. (134 A.L.R. 312). In many of the cases, no personal obligation to pay taxes rested upon the successor in interest of the mortgagor, and the mere relationship of the parties was considered sufficient justification for the application of the rule. (134 A.L.R. 297.) It has been pointed out "that the decisive factor is not whether the obligation to pay the tax rests on the one asserting the tax title, but whether on broad equitable grounds he should be estopped to assert such title." (134 A.L.R. 294.)

In this state, the general question was considered in *Barnard* v. *Wilson*, 74 Cal. 512 [16 P. 307], and it was there said at page 517, "A mortgagor is under obligation, from the nature of the mortgage contract, to preserve the property pledged for the purposes of the original security; and on grounds of public policy, to insure faith and fair dealing, he

is estopped, independent of convenants of warranty, from denying the existence of the lien which he has attempted to create, or defeating its enforcement against the property on which it is placed; and those claiming under the mortgagor are equally estopped." This case and the authorities therein cited have been recently cited with approval in *Garvey* v. *Byram*, 18 Cal.2d 279 [115 P.2d 501, 136 A.L.R. 1137].

It thus appears that while the estoppel against the mortgagor has been based in some decisions upon the narrower ground of a violation by the mortgagor of his personal obligation to pay the taxes, such estoppel against both the mortgagor and his successors may be and frequently has been based upon the broader ground that a disability should be imposed upon said parties by virtue of the mere relationship existing between them and the mortgagee. If this broader ground be the true basis of the rule, and we believe that it is, the claim of defendants that they were under no personal obligation, as heirs of the mortgagor, to pay the taxes, and particularly the taxes accruing prior to the death of Edith G. Elliott, need not be considered. Neither need we consider the fact that the statute of limitations had been successfully pleaded by George P. Elliott in the foreclosure action as he is treated here solely as one of the heirs of Edith G. Elliott, deceased, and not as one of the signers of the note and mortgage. ▇ If it be assumed that the heirs were under no personal obligation to pay any taxes accruing prior to the death of Edith G. Elliott, nevertheless the rights of the heirs with respect to the property were no greater or better than the rights of their ancestor. (*Carlson* v. *Carlson*, 124 Cal.App. 207 [12 P.2d 165]; *Burdick* v. *Kerkovecz*, 81 Cal.App. 786, 792 [254 P. 684].) And as their ancestor, who was the mortgagor, could not have successfully asserted a tax title to defeat the title of plaintiff acquired through foreclosure of the mortgage, we are of the opinion that the heirs had no better right and that they labored under the same disability.

The judgment is reversed.

Nourse, P. J., and Dooling, J. pro tem., concurred.