[Civ. No. 27017. First Dist., Div. Four. June 11, 1970.]

DOHRMANN CO., Plaintiff and Appellant, v.
SECURITY SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

**658**

### COUNSEL

Mantalica, Barclay & Teegarden, Frank Barclay and Fitzgerald, Abbott & Beardsley for Plaintiff and Appellant.

Richard J. Moore, County Counsel, and Thomas J. Fennone, Deputy County Counsel, Burd, Hunt & Friedman and John J. Bartko for Defendants and Respondents.

### OPINION

RATTIGAN, J.—This appeal presents questions relating to (1) the validity of a tax sale of personal property as affected by the notice given thereof, and (2) the effect of an erstwhile junior encumbrancer's tax purchase of the property.

Appellant Dohrmann Co. (hereinafter "plaintiff") brought the action, for declaratory relief, against Security Savings and Loan Association ("Security") and Edwin Meese, Jr., as tax collector of the County of Alameda. The complaint sought, among other things, a declaration that plaintiff held a valid security interest in certain personal property, as the unpaid conditional seller thereof and "prior in right to any and all claims of de-

fendants." The trial court entered judgment on the pleadings adverse to plaintiff, who appeals.

## The Complaint

As will appear, the questions presented require close examination of the allegations in the complaint. We summarize them, and quote them in part, as follows:

The personal property in dispute consists of certain items of hotel and restaurant equipment (occasionally identified in the complaint, and herein, as "Lot 15"). On September 29, 1961, under a written conditional sales contract, plaintiff sold them to one Stockman "to be used by Stockman in his business known as Edgewater Inn" and located at a specified address in Alameda County.[1] The contract provided that plaintiff retained title to Lot 15 until the purchase price ($221,547.53, payable by Stockman in installments) had been paid in full; and that Stockman "agreed to pay all taxes and assessments levied against" the property.

The Edgewater Inn, a hotel, was constructed on land held by Stockman under lease; he owned "the leasehold and hotel buildings." In 1963, he executed and delivered to Security (1) his promissory note evidencing a loan from Security in an unspecified amount, (2) a deed of trust securing its payment and covering the leasehold and buildings at the Edgewater Inn, and (3) a chattel mortgage covering all personal property located on the premises, including the Lot 15 items sold by plaintiff under the 1961 conditional sale contract.

Thereafter Stockman "failed to pay unsecured personal property taxes due to Alameda County for the fiscal year ending June 30, 1966." ". . . [P]rior to May 10, 1966, the County of Alameda, acting by and through the [defendant] tax collector, and pursuant to authority vested in it by Revenue and Taxation Code [section] 2914, took possession of the premises of Edgewater Inn for the purpose of seizure and sale, to satisfy the delinquent unsecured personal property taxes levied against the premises and the contents thereof." On May 10, 1966, defendant tax collector "posted a Notice of Tax Sale and mailed copies to secured creditors of Stockman," including plaintiff.[2]

---

[1]The allegation concerning where the Lot 15 property was "to be used" appears in the complaint, but language to that effect is not necessarily in the contract; the latter was not pleaded *in haec verba.*

[2]As set forth in the complaint, the "Notice of Tax Sale" posted and mailed on May 10, 1966, read in full as follows:

"TAX SALE

"On May 19, 1966 at the hour of 10:00 A.M., at his office, 1221 Oak Street, Oakland, the Tax Collector of Alameda County intends to sell at Public Auction, the

On May 16, 1966, a petition in voluntary bankruptcy was filed against Stockman in the United States District Court for the Northern District of California. The tax sale scheduled for May 19 did not materialize because the bankruptcy court restrained it. Pursuant to subsequent orders in the bankruptcy proceeding, "Stockman remained as Debtor-in-Possession of the Edgewater Inn, and continued to operate the hotel under the jurisdiction of the Bankruptcy Court." This arrangement terminated when he was adjudicated a bankrupt on January 3, 1968, at which time "[T]he Trustee in Bankruptcy took possession of the assets of Stockman, including the leasehold, buildings and personal property located at the Edgewater Inn. Among the assets of Stockman of which the Trustee took possession was the personal property [Lot 15] sold by plaintiff to Stockman under the contract of sale dated September 29, 1961."

On February 13, 1968, the trustee conducted a public bankruptcy sale of all of said assets. No bids having been accepted, and on the same day, the trustee sold them—including the Lot 15 items—to Security at a private sale which was subsequently confirmed by the bankruptcy court. The private February 13 sale was made and confirmed without notice to any of Stockman's creditors, including plaintiff. "Such sale was subject to any rights which any secured creditor [of Stockman] might have in the property and subject to any and all claims of the [defendant] Tax Collector for taxes then delinquent and unpaid, and Security had knowledge of that fact." When and before the bankruptcy sale occurred, Security also had "actual knowledge" that plaintiff claimed a security interest in the Lot 15 property under its 1961 conditional sale contract with Stockman.

On February 20, 1968, "Security was in possession, as owner, of the leasehold and buildings of Edgewater Inn . . . and of the personal property appurtenant thereto as purchaser from the Trustee in Bankruptcy." On the same date, defendant tax collector posted, in three public places, notices of tax sale setting a public sale, on February 28, 1968, "of the leasehold, buildings and all personal property in the premises as to which unsecured personal property taxes were delinquent and unpaid." No other notice of the scheduled sale was given, and plaintiff was not sent a copy of the notice as posted. Also on the same date (February 20, 1968), Security paid to defendant tax collector the amount of the delinquent property taxes on the leasehold and buildings, but not that portion of the delinquent taxes which was attributable to the personal property on the premises.

---

buildings known as the Edgewater Inn, located at 455 Hegenberger Road in the City of Oakland as well as the taxpayer's right, title and interest in the ground lease upon which the buildings are situated.

"The above described property is being sold to satisfy the payment of delinquent unsecured property taxes due the County of Alameda.

"If further information is desired, please call J. Scully, 444-0844, Ext. 447."

On February 28, 1968, defendant tax collector conducted the scheduled public sale of the personal property. Security bid the sum of $18,214.35, the full amount of taxes due (plus penalties and interest), and defendant tax collector executed and delivered to Security a bill of sale covering all the personal property (including the Lot 15 items). Plaintiff received no "direct notice" of this sale at any time beforehand, and had no "actual notice" thereof until afterward.

Security was, on February 20, 1968, and still is, in possession of the leasehold, buildings and personal property at the Edgewater Inn, and has been operating the hotel business and receiving the income therefrom. On that date, the fair market value of the Lot 15 property in Security's possession was "not less than $100,000.00"; the unpaid amount of the purchase price "currently" due plaintiff, under its 1961 conditional sale contract with Stockman, is $154,544.73.

"At all times since May, 1966, the defendants, and each of them, had actual knowledge: (a) that plaintiff claimed a security interest as unpaid conditional seller in the personal property . . . herein referred to as 'Lot 15'; (b) of the address of the principal office for the transaction of business of plaintiff; (c) that posting of Notice of Tax Sale in three public places was not such notice as would reasonably convey to plaintiff the information contained therein."

The complaint also set forth the respective positions of the parties as follows: Plaintiff contends that the purported tax sale operated to deny it due process because of the insufficient notice thereof; that Security, paying the delinquent taxes, was "not a purchaser at a tax sale, but was an owner of property redeeming said property from the tax lien asserted by the [defendant] Tax Collector"; that plaintiff retained its prior security interest in the property; and that Security's assertion of exclusive title to, and its use of, the property constituted a conversion thereof. Defendants contend that the tax sale was valid as against plaintiff; that it vested exclusive title in Security, free and clear of plaintiff's claims; and that Security was a tax sale purchaser, "not an owner redeeming said property from the tax lien."

### The Judgment on the Pleadings

Both defendants filed general demurrers to the complaint; neither demurred specially. The treatment and disposition of the general demurrers is recited in the judgment, pertinent portions of which are set forth in the margin.[3] They asserted, on behalf of the demurring defendants respectively,

---

[3]". . . It was stipulated by and between all counsel and the Court that defendants' demurrer [sic] should be considered as a motion [sic] for judgment on the plead-

that the complaint stated no cause of action against either. The trial court upheld this position, but—following the parties' stipulation—did so by entering judgment on the pleadings, in defendants' favor, rather than by sustaining their demurrers without leave to amend and entering judgment of dismissal accordingly.

The procedure thus followed is both proper and desirable in an action for declaratory relief. (*Wilson* v. *Board of Retirement* (1957) 156 Cal.App.2d 195, 200-203 [319 P.2d 426]. See *Wilson* v. *Civil Service Com.* (1964) 224 Cal.App.2d 340, 344 [36 Cal.Rptr. 559].) Since the declaratory judgment is on the pleadings, however, it must be reviewed "the same as would be a judgment of dismissal entered following the sustaining of a general demurrer, and the allegations in . . . [the] . . . complaint must be taken as true, and so taken the question is whether a cause of action has been stated. [Citations.]" (*Gill* v. *Curtis Publishing Co.* (1952) 38 Cal.2d 273, 275 [239 P.2d 630]. *Accord: Beverage* v. *Canton Placer Min. Co.* (1955) 43 Cal.2d 769, 772 [278 P.2d 694]; *Amacorp Industrial Leasing Co.* v. *Robert C. Young Associates, Inc.* (1965) 237 Cal.App.2d 724, 730 [47 Cal.Rptr. 294].)

It first appears that plaintiff's interest in the Lot 15 items, as acquired under the 1961 conditional sales contract, was originally senior to the interest acquired by Security under Stockman's 1963 chattel mortgage; and that its seniority survived Security's purchase at the bankruptcy sale conducted on February 13, 1968, because that event—according to the complaint—was "subject to any rights which any secured creditor [of Stockman, the bankrupt] might have in the property," and because Security purchased with "actual knowledge" of plaintiff's claimed interest. The parties do not dispute these conclusions. Whether the complaint states a

---

ings, there being no disputed issues of facts for the purposes of this motion. After considering the argument of counsel, and the papers and records on file herein, it appears, and the Court finds, that as a matter of law, the plaintiff is not entitled to the declaration which it seeks and that a declaration should be entered settling this controversy in favor of the defendants on the basis of the undisputed facts alleged in the complaint.

"ACCORDINGLY, IT IS ORDERED, ADJUDGED AND DECREED that the personal property claimed by the plaintiff was duly and lawfully sold by the Tax Collector of the County of Alameda at public auction to the defendant Security . . . for the payment of delinquent taxes; and that the defendant Security . . . , as a purchaser with no legal or moral obligation to pay the taxes on the aforesaid property, acquired full right, title and interest to the said property by reason of the bill of sale executed by the defendant Tax Collector . . . , free and clear of any claim to said property asserted by the plaintiff; and that the property claimed by the plaintiff was at all times lawfully held by the defendants and that the defendants did not convert said property . . .

"IT IS FURTHER ORDERED that the plaintiff take nothing, that judgment on the pleadings be entered in favor of the defendants and that the defendants recover their costs herein incurred . . ."

cause of action therefore invokes both theories mentioned in it: (1) that the February 28, 1968, tax sale was invalid, as to plaintiff, because of the insufficient notice given, and (2) that Security was not in a position to preclude plaintiff's senior interest when it purchased tax title at the sale. We hold that the complaint states a cause of action upon both theories (which we view alternatively, not in combination); we reverse the judgment.

### The Quality of Security's Tax Title

A necessarily preliminary question is whether Security can rely upon defendant tax collector's bill of sale to defend its claimed tax title against attack upon either ground mentioned. In this regard, Security cites Revenue and Taxation Code[4] section 3712, and several decisions, for the proposition that "a purchaser at a tax sale receives title free and clear of all encumbrances." Section 3712, however, relates to the quality of title acquired by a person who purchases, from the state, "tax-deeded property" (§ 127) which was previously "tax sold property" (§ 126), and which (1) originally appeared on the local taxing agency's "secured roll" because it was subject to a lien for taxes (§ 109); which subsequently vested in the state by reason of delinquent taxes and by operation of law (§ 3436); and which, by statutory definition, is real property only. (§ 126. See, generally, division 1, part 6, chapters 1 through 7, inclusive [commencing with § 3351]; Ehrman and Flavin, Taxing California Property (1967) §§ 241 [pp. 218-219], 532-548 [pp. 507-520]; 3 Witkin, Summary of Cal. Law (7th ed. 1960) Taxation, §§ 79-86, pp. 2195-2202.) As pertinent here, the relevant decisions cited by Security also deal with tax-sale title to real, not personal property. (*California Loan etc. Co.* v. *Weis* (1897) 118 Cal. 489, 492, 494 [50 P. 697]; *Helvey* v. *Sax* (1951) 38 Cal.2d 21, 24 [237 P.2d 269]; *Smith* v. *Addiego* (1942) 54 Cal.App.2d 230, 235 [129 P.2d 953]; *Connors* v. *Jerome* (1948) 83 Cal.App.2d 330, 331 [188 P.2d 770].)

In contrast (and according to the present complaint's allegations and the inferences reasonably to be drawn therefrom), the Lot 15 items were personal property which had appeared on Alameda County's "unsecured roll" (see § 109), and which had been seized and sold for delinquent taxes pursuant to section 2914. A tax collector, seizing and selling personal property for taxes, is acting under the statutory equivalent of a common law writ of distraint. (See *In Re Timberline Lodge* (D.Ore. 1955) 139 F.Supp. 13, 16.) He does not, however, pass title to personal property which has been perfected from his own lien upon it; unlike the situation with realty, the law gives him no tax lien on personal property. (Ehrman and Flavin [*op. cit. supra*]' § 529, pp. 504-505. See *Fresno County* v.

---

[4] All statutory references hereinafter are to the Revenue and Taxation Code.

*Commodity Credit Corp.* (6th Cir. 1940) 112 F.2d 639, 640.) Section 3712, operating to deliver clear title to property sold for taxes, is part of a statutory scheme which is obviously designed to stabilize and guarantee tax title to realty. The Legislature has enacted no similar scheme as to personal property. ■ We therefore conclude that title to personal property, passed at a tax sale pursuant to section 2918[5] (under which Security claims clear title here), is not impervious to challenge for cause. In the present case, and as next discussed, such cause appears.

### The Due Process Question

■ When conducting a proceeding which may result in the termination of a citizen's title to property, government denies due process of law to a known, interested party if it fails to give him adequate notice of its action. (*Mullane* v. *Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 318-320 [94 L.Ed. 865, 875-877, 70 S.Ct. 652]. Accord: *Walker* v. *Hutchinson City* (1956) 352 U.S. 112, 113-114, 116 [1 L.Ed.2d 178, 180-182, 77 S.Ct. 200]. See *Estate of Reed* (1968) 259 Cal.App.2d 14, 22 [66 Cal.Rptr. 193]; *Wisconsin Electric Power Co.* v. *City of Milwaukee* (1953) 263 Wis. 111 [56 N.W.2d 784]; *id.* (1956) 272 Wis. 575 [76 N.W.2d 341, 342]; *id.* (1956) 352 U.S. 948 [1 L.Ed.2d 241, 77 S.Ct. 324]; *id.* (1957) 275 Wis. 121 [81 N.W.2d 298, 299]; *Meadowbrook Manor, Inc.* v. *City of St. Louis Park* (1960) 258 Minn. 266 [104 N.W.2d 540, 543].) ■ Notice given according to statutory ritual will not necessarily meet due process standards: "[t]he means [of notice] employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Mullane* v. *Central Hanover Bank & Trust Co., supra,* at p. 315 [94 L.Ed. at pp. 873-874].) ■ As to known persons with known addresses, "[e]xceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." (*Id.,* p. 318 [94 L.Ed. at p. 875].)

In most of the decisions just cited, the notice in question was given by newspaper publication. (*Mullane* v. *Central Hanover Bank & Trust Co., supra,* 339 U.S. 306 at pp. 309-310 [94 L.Ed. 865 at pp. 870-871, 70 S.Ct. 652]; *Walker* v. *Hutchinson City, supra,* 352 U.S. 112 at pp. 113-114 [1 L.Ed.2d 178 at pp. 180-181]; *Wisconsin Electric Power Co.* v. *City of Milwaukee, supra,* 81 N.W.2d 298 at p. 299; *Meadowbrook Manor, Inc.* v. *City of St. Louis Park, supra,* 104 N.W.2d at pp. 541, 542.)

---

[5]"2918. On payment of the price bid for property sold, the delivery of the property with a bill of sale vests title in the purchaser."

According to the present complaint, the only notice of February 28, 1968 tax sale was given by posting "in three public places" which are not described. While this action was obviously taken in compliance with section 2916,[6] the adequacy of the notice thereby given plaintiff is open to question. The complaint, questioning it, expressly alleges that the notice was inadequate and that defendant tax collector knew this. Challenging the validity of the tax sale thus noticed, the complaint states a cause of action under the *Mullane* rule. (*Mullane* v. *Central Hanover Bank & Trust Co., supra,* at p. 320 [94 L.Ed. at p. 876].)

### Security's Position at the Tax Sale

Plaintiff contends that the facts alleged in its complaint bring Security within the rule that one who is in default of payment of taxes on liened property, or someone claiming under him, is estopped from asserting a tax title against a prior lienor. (*Weisberg* v. *Loughridge* (1967) 253 Cal.App.2d 416, 420-421 [61 Cal.Rptr. 563]; *Dinkelman* v. *Harrison* (1943) 61 Cal.App.2d 258, 261 [142 P.2d 461].) At its inception, the rule was applied to estop "one who is under a moral or legal obligation to pay the taxes"; he was precluded from perfecting his title at a tax sale because "his purchase is deemed one mode of paying the taxes." (*Christy* v. *Fisher* (1881) 58 Cal. 256, 258.) Thus expressed, the rule has prompted the present parties to debate the question whether the complaint alleges that Security, having acquired Stockman's title to the Lot 15 property at the bankruptcy sale, was under a "moral or legal obligation" to pay the taxes levied against it.

The complaint does not allege or imply any such obligation in Security. In our view, however, the rule was expressed more broadly—and better— by the *Dinkelman* court in this language: "[W]hile the estoppel against the mortgagor has been based in some decisions upon the narrower ground of a violation by the mortgagor of his personal obligation to pay the taxes, such estoppel against both the mortgagor and his successors may be and frequently has been based upon the broader ground that a disability should be imposed upon said parties by virtue of the mere relationship existing between them and the mortgagee." (*Dinkelman* v. *Harrison, supra,* 61 Cal.App.2d 258 at p. 262.) The present complaint alleges in effect that Security, having acquired Stockman's equity in the Lot 15 items by its bankruptcy purchase, became a competitive lienor thereof with plaintiff. It explicitly alleges that Security knew of plaintiff's claimed prior lien,

---

[6]As pertinent, section 2916 provides that "Notice of the time and place of sale shall be given a least one week before the sale by publication in a newspaper in the county, or by posting in three public places." We note that "posting" need not be near the property to be sold, nor even in the county or state where it is located.

and that it (plaintiff) had not received adequate notice of the tax sale which purportedly divested it (plaintiff) of title to the property. These allegations spell out a sufficient "relationship," between Security and plaintiff, to support a finding that the former is estopped to assert its tax title against plaintiff. (*Dinkelman* v. *Harrison, supra.*) The complaint therefore states a cause of action upon this theory.

### Diligence on the Part of Plaintiff

Arguing against the conclusions we have reached, defendants urge that relief must be denied because of plaintiff's lack of diligence in protecting its interest in the Lot 15 items. This is a matter of proof; under the facts alleged in the complaint, we cannot hold as a matter of law that plaintiff's conduct precludes its statement of a cause of action upon either theory mentioned herein.[7]

The judgment on the pleadings is reversed, and the cause remanded to the trial court with directions to overrule the general demurrers to the complaint.

Devine, P. J., and Christian, J., concurred.

---

[7]Although plaintiff received notice of the tax sale originally scheduled for May 19, 1966, the notice referred only to the sale of the leasehold and buildings at the Edgewater Inn; it did not mention the Lot 15 items to which plaintiff held title under the 1961 conditional sale contract, nor any other personal property. (See fn. 2, *ante.*) So far as is alleged in the complaint, plaintiff had no knowledge that the Lot 15 items were located at the Edgewater Inn. (See fn. 1, *ante.*) While the evidence may show to the contrary, the complaint nonetheless states a cause of action.