Charles H. KAPLAN, Lillian S. Kaplan, Justin G. Turner, Gertrude Turner, Maurice S. Turner and Rose S. Turner, a co-partnership, doing business as Town Investments, Appellants,

v.

Max GUTTMAN, debtor, and Anna Lubell, Appellees.

No. 13896.

United States Court of Appeals
Ninth Circuit.

Nov. 9, 1954.

Loeb & Loeb, Walter S. Hilborn, Los Angeles, Cal., for appellants.

Ernest R. Utlay, Wapner & Wapner, Joseph M. Wapner, Los Angeles, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and CLARK, District Judge.

JAMES ALGER FEE, Circuit Judge.

On March 1, 1948, Charles H. Kaplan and others, a partnership known as "Town Investments," here appellants, filed action in the Superior Court of the State of California for Imperial County against Max Guttman and others, seeking to quiet title to the "Smith Ranch." Anna Lubell appeared there as a defendant and filed answer claiming one-fourth interest in the realty. Max Guttman filed a petition on December 10, 1948, under § 75, subs. a to r of the Bankruptcy Act.[1] One-half interest in Smith Ranch was listed as real property in which he claimed a part. The record title to this property was in the Kaplan partnership. The partners filed a claim against bankrupt upon a note for $90,000.00, secured by a

1. Subsequently filed under § 75, sub. s, 11 U.S.C.A. § 203.

deed of trust on real property referred to as the A. K. Paul Ranch in Imperial County, California. To this, Guttman filed objections, including allegations as to his right to one-half of Smith Ranch. In these objections he claimed part of his interest really belonged to Anna Lubell. On April 17, 1950, Anna Lubell intervened in the conciliation proceeding, reciting the pendency of the action in the state court and setting up a stipulation entered therein which apparently held the action in abeyance until the rights of Guttman had been settled in the federal proceeding, and praying that she be awarded one-fourth interest in this real property.

The Smith Ranch at all times in the litigation was subject to a first trust deed securing indebtedness to one Mack, who petitioned the conciliation commissioner for permission to sell the realty under power therein reserved. Anna Lubell attempted to have the sale restrained by the commissioner by petition filed April 25, 1950. Upon a stipulation entered by appellants and Anna Lubell, the sale proceeded June 7, 1950.

In an order made by the conciliation commissioner at the time, he gave half of the fund arising from the sale to the Kaplan partnership and directed the other half be deposited in a bank "pending the final outcome of the litigation now pending upon the claim of Town Investments, a co-partnership, and subject to such final orders and directions as may be made in relation thereto." The money was so deposited.

The conciliation commissioner decided on July 10, 1950, that Guttman had no interest in the real property, and added clauses reserving the determination of the rights of Anna Lubell. There was no finding that Guttman was then or had been on filing of his petition in possession of Smith Ranch or any part thereof.

On October 31, 1950, on petition of Anna Lubell, the conciliation commissioner issued a restraining order to the parties in the state court in which the action to quiet title was pending preventing further prosecution thereof. On the same day, the conciliation commissioner overruled the objections of appellants to the summary jurisdiction of the bankruptcy court over the one-fourth interest in Smith Ranch claimed by Anna Lubell.

On March 10, 1953, the District Court adopted the findings and conclusions and affirmed the orders of the conciliation commissioner of October 31, 1950. From each of these orders, the members of the Kaplan partnership have appealed.

There are two theoretical bases for the contention of Anna Lubell. The first is that the partnership filed a claim in the bankruptcy court and that Guttman set up a counterclaim thereto which involved respondent's interest. The second is that the real property came into the possession of the court and is now represented by the funds arising from the sale thereof.

 Under the provisions of the federal Constitution, Article I, § 8, Congress has extended to the federal courts "original jurisdiction in proceedings" in bankruptcy, Title 11 U.S.C.A. § 11, which carries paramount authority so far as it extends. But thereby no general equitable power was conveyed.[2] The grant is closely circumscribed by statutory limitations.[3] Furthermore, even where the United States courts have complete jurisdiction, by comity their officers frequently refer controversies to the state courts, which administer local law, in order to arrive at a solution most compatible with the mores of the community. This was not done here. Although it might well have been, no question of abuse of discretion is here consid-

---

2. Billings Credit Men's Ass'n v. Bogert, 9 Cir., 5 F.2d 307, 309. "By virtue of § 2 a bankruptcy court is a court of equity at least in the sense that in the exercise of the jurisdiction conferred upon it by the Act, it applies the principles and rules of equity jurisprudence." Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281.

3. It is settled that the bankruptcy court, like all federal courts, has only such ju-

ered, but only whether the orders fell within the ambit of the power of a referee.

■ First, the court had summary jurisdiction to pass upon the claim of a creditor against the estate. Where this power exists, it is exclusive of another tribunal. It is a matter of debate as to whether this authority includes summary jurisdiction to determine a counterclaim owned by bankrupt against the party presenting the demand against the estate.[4] The claim of the Kaplan partnership, according to the record, was a secured claim against other realty[5] than Smith Ranch. The counterclaim of Guttman was based upon a right to one-half the latter property. This has been determined against him. If jurisdiction subsisted, it is exhausted as far as concerns this particular counterclaim.

■ Unquestionably, if the counterclaim by Guttman arose out of the same transaction as the claim and appellants had participated in the proceedings as the record shows they have, consent to adjudication might be found. No right to jury trial is involved. Appellants are before the Court, and jurisdiction of their persons, vital to equitable consideration, is present. There are barricades, however, to this corridor of approach. The obvious obstacle is that the right at the basis of the counterclaim must be possessed by the debtor Guttman and not by Lubell. Otherwise, the bankruptcy court would have no jurisdiction of a chose in action not surrendered to it by Guttman, the bankrupt. If Guttman had

no right, then Lubell could have no right through Guttman in this forum. The conciliation commissioner could not cure this defect by attempting to reserve the right to consider her claim at a later date. The only controversy remaining was between the partners and Lubell. Nor could these parties confer jurisdiction by consent.

■ The bankruptcy court has authority to consider a claim to property, actually or constructively in the possession of the bankrupt or the trustee, whether such possession was gained before or after adjudication. Here there was no showing or finding that Guttman was in possession of Smith Ranch at any time. Legal title was in the Kaplan partnership. Possession follows legal ownership. The court found Guttman had no claim to this property.[6] There was therefore no jurisdiction in the bankruptcy court upon this basis. The conciliation commissioner had power to determine the merits of this controversy between Guttman and Town Investments because Guttman listed Smith Ranch in his petition under § 75 of the Bankruptcy Act. Once he decided the bankrupt had no interest, however, his authority ceased.

Notwithstanding this positive fiat that the bankrupt had no right, title or interest in or to this property, the conciliation commissioner sought to determine the rights of Anna Lubell thereto. "The Bankruptcy Court has no jurisdiction in controversies between third parties not involving the debtor or his property" was

---

risdiction as is conferred by statute. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 434, 44 S.Ct. 396, 68 L.Ed. 770.

4. A creditor who has filed proof of claim has not impliedly consented to adjudication of counterclaim for preference. B. F. Avery & Sons v. Davis, 5 Cir., 192 F.2d 255. Contra, In re Nathan, D.C., 98 F.Supp. 686.

5. Especially is this of importance in this case where the proceeding was originally filed under § 75, subs. a to r, because in those sections jurisdiction is founded upon the fact that the debtor is a farmer

and that he has a claim of definite type upon certain parcels of real estate.

6. "The goods in question had previously been decided by the referee to belong, not to the bankrupt estate, but to the bankrupt's wife, and, if this finding was correct, he had no further power over them. A court of bankruptcy cannot administer the property of a third person, neither can it protect such property from the claims of others. * * * no jurisdiction over such a subject has been committed to the bankrupt court." In re Berkowitz, D.C., 143 F. 598, 602.

succinctly said in our opinion in Evarts v. Eloy Gin Corp., 9 Cir., 204 F.2d 712, 717. The controversy here is exclusively between the Kaplan partnership and Anna Lubell. The cause is pending in the state court, where the rights of the contending parties can be settled. The conciliation commissioner had no power to determine the rights between the Kaplan partnership and Anna Lubell, summarily or otherwise,[7] especially when he had already found the property was not that of the bankrupt estate, was not in bankrupt's possession, and there was no counterclaim entitling bankrupt to rights in this realty.

■ The conciliation commissioner has impliedly found as a fact that the Kaplan partnership consented to summary determination of Lubell's claim against them and to adjudication of her rights in the real property by that officer. This finding is accepted. But the finding is immaterial. It is an axiom that consent cannot provide jurisdiction. Only where Congress has conferred power on the court to hear and determine a

particular kind of controversy, can adverse parties consent to exercise of judicial authority over persons or rights.[8] But it has been seen here, no mandate has been given by law to settle this dispute between third parties as to property in which bankrupt had neither right, title, interest nor possession. Consent[9] is of no avail.

■ The fact that the conciliation commissioner has a fund in his possession does not give him jurisdiction. He is a stakeholder.[10]

■ This litigation between Lubell and the Kaplan partnership, involving this particular piece of real property, was pending in the state court before the bankruptcy proceeding commenced. The conciliation commissioner should have yielded this determination to that tribunal by comity. It is now held that the federal court had no authority, and the fund must be surrendered for disposition.

The orders of the District Court are reversed.

7. "It has no jurisdiction to hear and determine controversies between adverse third parties which are not strictly and properly part of the proceedings in bankruptcy." Sylvan Beach v. Koch, 8 Cir., 140 F.2d 852, 861. "* * * cannot be used as a forum in which to litigate claims by third parties, strangers to the bankruptcy proceeding against creditors of the bankrupt." In re Pyrocolor Corp., D.C. S.D.N.Y., 46 F.2d 554, 556. In re Lubliner & Trinz Theatres, 7 Cir., 100 F.2d 646; In re Hotel Martin Co. of Utica, 2 Cir., 94 F.2d 643; Smith v. Chase National Bank, 8 Cir., 84 F.2d 608, 614; Brumby v. Jones, 5 Cir., 141 F. 318, 320.

8. It does not assist Lubell that it is now especially provided that an adverse claimant who "does not interpose objection to the summary jurisdiction of the court of bankruptcy * * * shall be deemed to have consented to such jurisdiction" since this power is expressly limited by the same section to the collection of "estates of bankrupts" and "controversies in relation thereto". § 2, sub. a(7) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(7).

9. "A District Court of the United States sitting as a court of bankruptcy is a court of limited jurisdiction. * * * And consent cannot confer jurisdiction over subject-matter. The express provisions of the statute and the necessary implications are controlling." Nixon v. Michaels, 8 Cir., 38 F.2d 420, 423. "As referee in bankruptcy his jurisdiction extends only to the determination of all questions of title affecting the property of the bankrupt. Gus Chakos was not a bankrupt. The controversy between him and Frawley was one concerning solely alleged civil liability of third persons. Not even by the consent of the parties could the referee as such make an order of any effect or validity." In re Chakos, 7 Cir., 24 F.2d 482, 485.

10. In re Prince, 2 Cir., 89 F.2d 681, 684.