**In the Matter of B. R. BARASCH, Debtor.**

**Joel MITHERS, Receiver, Appellant,**

v.

**Shirley Lee BARASCH, Appellee.**

**No. 25353.**

United States Court of Appeals, Ninth Circuit.

March 26, 1971.

David A. Gill, of Danning & Gill, Sherman Oaks, Cal., for receiver-appellant.

Bernard Shapiro, of Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for appellee.

Before BARNES, KOELSCH and HUFSTEDLER, Circuit Judges.

BARNES, Circuit Judge.

This appeal concerns a controversy arising under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799: Does the Bankruptcy Court have summary jurisdiction to determine the rights of the debtor and his wife, over her objection, in and to community property awarded to the wife by an interlocutory decree of divorce, appeals from which were pending at the time the receiver sought turnover orders in respect to such property? This Court's jurisdiction on appeal from the final order below is based upon Section 24a of the Act, 11 U.S.C. § 47 (a).

In 1967, Buddy R. Barasch ("Buddy"), the debtor, filed suit for divorce in the Superior Court for Los Angeles County. His wife and appellee here, Shirley B. Barasch ("Shirley"), filed a cross-complaint. During the course of the divorce proceedings, various *pendente lite* orders were entered regarding the then community property of the parties. On August 4, 1967, an order was entered authorizing Shirley to dissolve two family corporations. On May 29, 1968, a second *pendente lite* order granting her exclusive powers to manage and control certain real properties was entered. Pursuant to this order, however, she was prohibited from using the proceeds for her own use and was to render an account to her husband.

After a prolonged and bitter trial, an Interlocutory Decree of Divorce was entered by the Superior Court on August 19, 1968, awarding a substantial portion of the community property to Shirley. In the decree, Shirley was ordered to pay most of the creditors who could look to the community property. Both parties appealed from the interlocutory decree. The California Court of Appeal upheld the disposition of the trial court shortly before the hearing in this case. A petition for hearing before the Supreme Court of California may be filed.

While the state court appeals were pending, Buddy, the husband, filed a petition on November 18, 1968, under §

322 of the Bankruptcy Act, seeking an Arrangement under Chapter XI. Appellant Joel Mithers was appointed as Receiver of the debtor's estate. He immediately made demand upon Shirley for the property, and, upon her refusal, filed an Application to Confirm the Jurisdiction of the Bankruptcy Court over the property, for a Turnover Order, Accounting and Injunctive Relief. Shirley specially appeared, contested the summary jurisdiction of the Bankruptcy Court and objected to the petition.

After a hearing, the Referee ruled that the bankruptcy court had no summary jurisdiction to grant the relief sought by the Receiver and filed his Findings of Fact, Conclusions of Law and Order denying the petition. The Receiver then filed an Application to Review the Referee's Order and an Application for Injunctive Relief *Pendente Lite* in the District Court. Both matters were resolved upon hearing against the Receiver by the Judge's Order of November 13, 1969. It is from this affirmance of the Referee's Order that the present appeal is taken.

In the instant case, appellant Receiver argues that in bankruptcy proceedings under Chapter XI the test of summary jurisdiction is debtor's ownership, not actual or constructive possession as in ordinary bankruptcy. In response to a similar claim, we said recently in Wikle v. Country Life Insurance Co., 423 F.2d 151, 153 (9th Cir. 1970):

"The two major bankruptcy treatises are in conflict on this point. Appellant relies on statements in 8 Collier on Bankruptcy, ¶ 3.02, pages 176–182, while appellees counter with a contrary view in 9 Remington on Bankruptcy, § 3573, pages 214–18 6th Ed. 1955. Although the matter is not free from doubt, case authority favors appellees' position. Sada Yoshinuma v. Oberdorfer Insurance Agency, 5 Cir., 136 F.2d 460, 461; Lockhart v. Garden City Bank and Trust Co., 2 Cir., 116 F.2d 658; In re California Paving Co., N.D.Cal., 95 F.Supp. 909."

In Loyd v. Stewart and Nuss, Inc., 327 F.2d 642, 645 (9th Cir. 1964), and Pasadena Investment Company v. Weaver, 376 F.2d 175, 178 (9th Cir. 1967), however, this Court noted that "Section 311 [11 U.S.C. § 711] confers exclusive summary jurisdiction to determine controversies with respect to property owned by the debtor, *or* in the actual or constructive possession of the debtor or the Bankruptcy Court."

█ Despite this seeming disagreement, we are not required to reach this precise question in resolving this case. Our past holdings establish that whether the "title" or the "possession" theory is accepted and applied in Chapter XI proceedings, the bankruptcy court "does not acquire summary jurisdiction over property not in the debtor's possession where the debtor's title to it is disputed by a substantial adverse claim." Loyd v. Stewart and Nuss, Inc., *supra* at 645; Pasadena Investment Co. v. Weaver, *supra, Collier, supra,* at 181–182, seems in agreement on the point although its treatment of this issue is somewhat unclear. In Martoff v. Elliott, 326 F.2d 204, 207–208 (9th Cir. 1963), we applied the test for the substantiality of an adverse claim in bankruptcy set out by the Supreme Court in Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926). In *Harrison,* the Court stated that:

> "[W]e are of opinion that [an adverse claim] is to be deemed of a substantial character when the claimant's contention 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy' * * * in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense." (*Id.* at 195)

In the proceedings below, the referee in bankruptcy decided that the appellee's adverse claim under the interlocutory divorce decree was substantial and therefore deprived the bankruptcy court of summary jurisdiction. We agree. The appellee's claim of ownership must, of course, be tested under California law. It need only be substantial and not irrefutable or incontestable.

Our review of applicable California law on the effect of an interlocutory decree under appeal discloses a situation which may be fairly characterized as uncertain. The concurring opinion of Justice Mosk in Decker v. Occidental Life Insurance Co., 70 Cal.2d 842, 848–849, 76 Cal.Rptr. 470, 474–475, 452 P.2d 686, 690–691 (1969) is enlightening:

> "[I]n merely adopting the Court of Appeal opinion the majority have failed to discuss or resolve two frequently recurring questions: (1) Does a trial court commit reversible error in ordering an immediately effective disposition of property in an interlocutory decree? (2) If not, where the language of the decree is ambiguous or silent on the question of intended timing, does the presumption favor immediate or delayed disposition? Proper resolution of this case, as well as necessary guidance to trial courts and the bar, compels a reply to these queries.
>
> "The first question is raised by implication, if not directly, in the instant case. In Luepe v. Luepe [sic] (1942) 21 Cal.2d 145, 149, 130 P.2d 697, this court determined that a trial court had the power—i. e., jurisdiction—to make an immediately effective disposition of property in an interlocutory decree, though perhaps it "should not" do so. Based on that hortatory expression; Gudelj v. Gudelj (1953) 41 Cal.2d 202, 214, 259 P.2d 656, held that regardless of the trial court's jurisdictional power, it was reversible error to make an immediate disposition. So far as our subsequent pronouncements indicate, this is the present state of the law.
>
> "However, Fritschi v. Teed (1963) 213 Cal.App.2d 718, 29 Cal.Rptr. 114, on which the majority largely rely, cast considerable doubt upon the *Gu-*

*delj* holding. Granted that *Fritschi* purported to distinguish *Gudelj* and later 'dissonant authorities,' it went beyond that point and strongly implied that *Gudelj* was not an accurate statement of the law and that it was 'out of harmony with common practices of trial judges and divorce counsel throughout the state.' (*Id.* at p. 723, 29 Cal.Rptr. at p. 117.) This implication was fortified by the court's readiness to conclude, in the face of ambiguous language, that the trial court had in fact made an immediate disposition. A clear inference is that, contrary to *Gudelj*, the trial court involved in *Fritschi* not only acted within its power, but it acted properly—i. e., did not commit reversible error—in making an immediate disposition.

"This court, by adopting the Court of Appeal opinion herein which relies on *Fritschi* for an identical conclusion, without mention of the *Gudelj* question, unfortunately perpetuates this confusion. It is now this court that implies an immediate disposition is proper—as I agree it should be—but without forthrightly stating as much. The *Fritschi* court, like the Court of Appeal below, was without power to do more than question the *Gudelj* holding; this court, however, can and should overrule it. I would hold that a trial court in its discretion may make an immediately effective property disposition in the interlocutory judgment of divorce, if the intention to do so is expressly stated therein."

Many cases in which the time for appeal has run, have followed *Leupe* and held that the interlocutory decree is binding on the parties and is *res judicata*. E. g., In re Chappel, 243 F.Supp. 417 (C.D.Cal.1965). Although *Gudelj* may still be good law where the interlocutory decree is under appeal, *Fritschi, supra* and *Decker* question its present strength and persuasiveness.

In addition, recent cases such as McClenny v. Superior Court, 62 Cal.2d 140, 41 Cal.Rptr. 460, 396 P.2d 916 (1964) and Elliott v. Elliott, 231 Cal.App.2d 205, 41 Cal.Rptr. 686 (1964) suggest that an interlocutory decree even though appealed does confer rights in the property upon the victorious spouse. In *McClenny* an interlocutory decree was entered in favor of the wife, reserving power to divide community property. Prior to any hearings concerning the rights of the parties to the community property, the wife died. The court held that "the interlocutory decree created in Mrs. McClenny a valuable property right which her death cannot destroy." *McClenny, supra* at 145, 41 Cal.Rptr. at 463, 396 P.2d at 919. Similarly, in *Elliott, supra*, the interlocutory decree of divorce awarded the wife a half interest in a promissory note which had been executed with the husband as the sole payee. While the husband's appeal was pending, the statute of limitations on the note expired. The wife then filed an action against the husband claiming that his wrongful refusal to recognize her interest caused the loss. In his defense, he argued that his refusal did not become wrongful until an adverse determination was rendered in the appeal from the divorce decree. The trial court found that the husband held the note as constructive trustee for the wife. Upon appeal, the California court stated that "[o]nce the interlocutory decree of divorce was entered, the wife's undivided interest in the note was legally established." (*Elliott, supra* at 209, 41 Cal. Rptr. at 688).

Despite strong language in In re Cummings, 84 F.Supp. 65 (S.D.Cal.1949) which accords California interlocutory divorce decrees no effect in a bankruptcy context, its precedential value appears eroded by subsequent state court decisions. On the whole, the precise status of subsequently appealed interlocutory divorce decrees is uncertain. We therefore feel justified in ruling that under controlling law, the appellee's adverse claim is substantial albeit not precisely determined. The recent cases cited above lead to the conclusion that an immediate disposition of property in a California interlocutory decree of divorce

does confer substantial rights on the receiving spouse although they are subject to divestment. Because of the intricacy and complexity of California family law (which we are comparatively seldom called upon to interpret), and the unclear status of the legal rule in relation to this narrow issue, we believe it inappropriate to determine more than the substantiality of the adverse claim presented.

■ No less in a Chapter XI arrangement than in a straight bankruptcy, the Receiver can take only what the bankrupt has when he files his petition. The interlocutory decree created at least a colorable divestment from the husband of his interest in the community awarded to the wife and created in her a substantial adverse claim in the same property. Under such circumstances the bankruptcy court did not have summary jurisdiction over the community property awarded to the wife by the interlocutory decree.

In light of our decision, we find no occasion to discuss whether the referee properly declined to exercise summary jurisdiction as a matter of discretion. Finally, we find no sufficient reasons advanced for injunctive relief *pendente lite*.

The Order of the District Court is affirmed.