447 F.2d 387
 In the Matter of STOCKMAN DEVELOPMENT COMPANY, a Limited Partnership, composed of Harry James Stockman, General Partner, and Betty Stockman, Limited Partner.
SECURITY SAVINGS AND LOAN ASSOCIATION, County of Alameda, Appellants,
v.
WESTINGHOUSE CREDIT CORPORATION, and American Acceptance Corporation, Appellees.
 No. 23465.
 United States Court of Appeals, Ninth Circuit.
 August 11, 1971.
 As Modified on Denial of Rehearing October 8, 1971.
 
 John J. Bartko (argued), John S. Burd, Jr., of Burd, Hunt & Friedman, San Francisco, Cal., Richard J. Moore, County Counsel, T. J. Fennone, Deputy County Counsel, Oakland, Cal., for appellees.
 Before HUFSTEDLER, WRIGHT and TRASK, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 This appeal is from orders of the district court affirming the action of the Referee in Bankruptcy who had granted petitions for the reclamation of personal property filed by the appellees, American Acceptance Corporation and Westinghouse Credit Corporation. The district court's jurisdiction was conferred by 28 U.S.C. § 1334 and that of this court by Section 24 (a) of the Bankruptcy Act, 11 U.S.C. § 47(a).
 
 
 2
 On May 18, 1966, an involuntary petition in bankruptcy was filed against the Stockman Development Company, a limited partnership. The alleged bankrupt then filed a petition pursuant to Chapter XI of the Act, but no plan of arrangement was confirmed and there was ultimately an adjudication on January 3, 1968. The principal asset of the debtor was a leasehold estate from the Port of Oakland upon which the debtor had constructed the Oakland Edgewater Hotel or Edgewater Inn. American Acceptance Corporation (American) and Westinghouse Credit Corporation (Westinghouse) were the contract assignees of firms which had sold personal property consisting of hotel equipment for use in the Oakland Edgewater, by conditional sales contracts. The appellant, Security Savings & Loan Association, appeared throughout the proceedings as a secured creditor holding a deed of trust on the leasehold estate of the debtor and the building constructed thereon.
 
 
 3
 Some of the facts in the complicated history of the Oakland Edgewater are not made entirely clear in the record before this court and probably not before the district court. Except as may be hereafter indicated those facts disclose that the financial problems of the debtor became acute when the Tax Collector of Alameda County, California, seized the hotel property for unpaid taxes on March 30, 1966, and thereafter on May 10, 1966, posted a notice of public tax sale for May 19, 1966. Whether the personal property contents were also seized and scheduled for sale is one of the questions unclear on the record. In any event the proposed sale was enjoined by the district court and the debtor retained control as a debtor in possession under the authority of the Bankruptcy Court.
 
 
 4
 Both American and Westinghouse filed Petitions for Reclamation of the personal property asserting rights under conditional sales contracts antedating the bankruptcy by several years. The petition of American was filed on September 6, 1967, and that of Westinghouse on February 5, 1968. Hearings on these petitions were continued pending efforts to sell the entire property. On January 3, 1968, Chapter XI proceedings were terminated and the debtor was adjudicated a bankrupt. Thereafter on February 19, 1968, the trust deed of Security on the leasehold estate and hotel building was foreclosed in state court with the permission of the Trustee in Bankruptcy. Security had purchased the bankrupt's interest in the furniture, furnishings and chattels at a trustee's sale on February 15, 1968.
 
 
 5
 On February 20, 1968, the Tax Collector with the consent of the Trustee noticed the sale on February 28, 1968, of the leasehold, fixtures, furniture and furnishings, and building for delinquent 1965 and 1966 taxes. Security immediately and voluntarily paid to the Tax Collector the tax delinquencies on the leasehold and buildings. Security did not pay the amount of taxes attributable to the personal property but permitted those items to go to sale and bid the full amount of taxes due on those items.
 
 
 6
 The Referee found that prior to the sale of the bankrupt's interest in the hotel property, including the personal property, Security had actual knowledge of the outstanding tax claims and the outstanding lien claims of American and Westinghouse, but that the latter were not notified of the pending sale. It was also found by the Referee that there had been a stipulation between American and Westinghouse and the Trustee that the conditional vendors would not reclaim the property until March 1, 1968, and that the administrative rent until this reclamation date was the sum of $1,650.00 which was paid.[1] The Notice of Tax Sale of the furniture, furnishings and chattels was posted by the Tax Collector on February 20, 1968, for sale on February 28, 1968. There was no actual notice given to either American or Westinghouse but the notice was posted in three public places.[2] However, notice was given to Security, and Security officials and the Tax Collector met before the Tax Sale at which time Security agreed to pay the taxes on the leasehold and building.[3]
 
 
 7
 It is evident from the transactions with the Bankruptcy Court in which the Tax Collector participated as well as in the manner in which he listed the chattels that he was on notice of appellees' claims.[4]
 
 
 Summary Jurisdiction of Bankruptcy Court
 
 
 8
 Appellants' first line of assault upon the orders of the District Court which affirmed the decision of the Referee in Bankruptcy granting the Petitions for Reclamation of the personal property consists of an attack upon the Referee's exercise of summary jurisdiction. Relying principally upon Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S. Ct. 628, 84 L.Ed. 876 (1940), appellant asserts that the summary jurisdiction of the Bankruptcy Court extends only to property in the possession of the bankrupt at the time of the filing of the petition in that court. Since the Sheriff of Alameda County is asserted to have gone into possession and seized the hotel and all of its contents for delinquent taxes and a public sale had been noticed on May 10, 1966, it is argued that the bankrupt was not in possession when the bankruptcy proceedings were filed some nineteen days later, and consequently there was no summary jurisdiction in the Bankruptcy Court to determine the competing rights to the personal property.
 
 
 9
 There appears to be complete agreement that under Chapters I to VII inclusive of the Act, the Bankruptcy Court has summary jurisdiction to determine controversies concerning property over which the bankrupt had actual or constructive possession at the time of the filing of the petition. 11 U.S.C. §§ 11, 110. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876 (1940); Hollywood National Bank v. Bumb, 409 F.2d 23 (9th Cir. 1969); Suhl v. Bumb, 348 F.2d 869 (9th Cir. 1965). Chapters I to VII are the provisions under which an estate is administered for the purpose of liquidation and distribution. Chapter XI on the contrary seeks an "arrangement" for the settlement or extension of time for payment of unsecured debts with protection of the debtor while the arrangement is being carried out. Jurisdiction for purposes of Chapter XI is contained in Section 711 of the Act.[5]
 
 
 10
 Collier on Bankruptcy interprets this language as a broadening of the jurisdiction of the Bankruptcy Court.[6] Remington is more guarded in its interpretation of the language of Chapter XI and blows both hot and cold on the question of enlarged jurisdiction. 9 Remington on Bankruptcy, § 3573, at 214-218 (6th ed. 1955). It does cite and quote with approval from Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658 (2nd Cir. 1940), where Judge Clark says:
 
 
 11
 "`But the mortgagee argues that the jurisdiction of the court and the title of the trustee under Chapter XI, unlike the situation in ordinary bankruptcy or in Chapter X [11 U.S.C.A. § 501 et seq.] proceedings do not extend to property on which a lien is held, because an arrangement may not alter the rights of secured creditors, §§ 306(1), 307(1, 2), 357; nor did the arrangement actually proposed in this case purport to do so. This, however, is not inconsistent with the exclusive jurisdiction of the court over mortgaged property. Under ordinary bankruptcy, too, the rights of secured creditors may not be curtailed (former Act, § 67, [sub. d, 11 U.S.C.A. § 107, sub. d]; present Act, § 57 [sub. h, 11 U.S.C.A. § 193, sub. h]; In re American Motor Products Corp., 2 Cir., 98 F.2d 774, 37 ABR NS 572); and the object of the court's control is not necessarily the curtailment of rights, but the supervision of their enforcement in order to protect the interests of other creditors, interests which would be substantial if the property proved to be more than sufficient to satisfy the secured debts. Isaacs v. Hobbs Tie & Timber Co., supra, 282 U.S. [734] at 738, 51 S.Ct. 270, 75 L.Ed. 666.'" (Emphasis supplied). 9 Remington at 216-217.
 
 
 12
 The purpose of Chapter XI was to permit arrangements whereby financially troubled debtors could more easily pay their unsecured debts and remain in business. It is true that there appears to be no provision giving the Bankruptcy Court direct and express control over encumbered assets. However, control by that court over assets of substantial value with relatively small encumbrances would seem to be vital to the success of an arrangement.[7] Chapter XI does provide that except where inconsistent with other provisions of Chapter XI, all provisions of Chapters I to VII are applicable to an arrangement proceeding (Section 302, 11 U.S.C. § 702); that the debtor in possession has the powers of a trustee (Section 342, 11 U.S.C. § 742); and that the court in which the petition for an arrangement has been filed has "exclusive jurisdiction of the debtor and his property, wherever located." (Section 311, 11 U.S.C. § 711). Nothing could seem to be more all-encompassing. Jurisdiction over the "debtor and his property" must necessarily include property owned but encumbered. Indeed, with a debtor in sufficient financial difficulties to be required to resort to the Bankruptcy Act it would be surprising to find very much of his property which was not encumbered. The same logic would require jurisdiction by the Bankruptcy Court as we hereafter point out.
 
 
 13
 As additional evidence that the Chapter XI jurisdiction was not intended to be restricted to a theory of possession, Section 314, 11 U.S.C. § 714 expressly gives the Bankruptcy Court authority to protect assets by injunction and to stay foreclosure proceedings — not just assets in the possession of the bankrupt.
 
 
 14
 The cases in this circuit on the point appear to be in some disarray. Our most recent treatment of a Chapter XI proceeding discusses the problem but does not resolve it. Mithers v. Barasch, 439 F.2d 1393 (9th Cir. 1971).
 
 
 15
 Earlier cases upon which appellant relies are distinguishable. For instance, Thompson v. Magnolia Petroleum Co., 309 U.S. 478 (1940), arose under a different section of the Bankruptcy Act.[8]
 
 
 16
 Four other decisions from this court are urged upon us by appellants. They are: Kapelus v. Joint Venture, 377 F.2d 815 (9th Cir. 1967); Suhl v. Bumb, 348 F.2d 869 (9th Cir. 1965); Kaplan v. Guttman, 217 F.2d 481 (9th Cir. 1954); and Evarts v. Eloy Gin Corp., 204 F.2d 712, 717 (9th Cir. 1953). Kapelus and Suhl were both Chapter XI proceedings. In both the court relied upon the summary jurisdiction holding and statement of Thompson v. Magnolia Petroleum Co., supra, n. 8, and no question was apparently presented as to the enlarging effect of Section 311. In Kaplan the proceedings were under the provisions for agricultural compositions and extensions, with the conciliation commissioner having the general jurisdiction of a Referee in Bankruptcy. Federal Land Bank of Louisville v. Castanien, 116 F.2d 589 (6th Cir. 1941). In Kaplan as well as in Evarts an attempt was clearly being made to invoke the jurisdiction of the Bankruptcy Court in third party proceedings. Their value as precedents here are of little assistance to the court.
 
 
 17
 As pointed out in Mithers v. Barasch, supra, more recent opinions have held to the view that Section 311 (11 U.S.C. § 711) confers exclusive summary jurisdiction,
 
 
 18
 "* * * to determine controversies with respect to property owned by the debtor or in the actual or constructive possession of the debtor or the Bankruptcy Court." Mithers v. Barasch, 439 F.2d 1393, 1395 (9th Cir. 1971).[9]
 
 
 19
 Barasch does not cite or comment upon the earlier decisions, and their authority on this narrow question of jurisdiction may not be taken as authoritative.[10]
 
 
 20
 Barasch does, however, affirm as the rule of this circuit that the Bankruptcy Court does not acquire summary jurisdiction where the property is not in the debtor's possession and the debtor's title to it is disputed by a substantial adverse claim.[11]
 
 
 21
 Appellant relies upon Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924) as controlling authority to establish that the personal property was not in the "possession of the bankrupt" at the date of the filing of the Chapter XI proceeding and therefore no summary jurisdiction attached. Appellant further asserts that here the Sheriff of Alameda County was in possession under a claim of right, just as the sheriff had seized the property in Taubel-Scott. Appellant paints with a broad brush. For one thing, Taubel-Scott was decided in 1924 under Chapters I to VII of the Bankruptcy Act and not under Chapter XI. Again, no finding was here made to the effect that the debtor was not in possession by either the Referee or by the district court. Appellant asserts that on March 30, 1966, the County seized the hotel together with the leasehold interest,
 
 
 22
 "* * * and all fixtures, equipment, chattels and other assets situated on or about said leasehold and the building thereon and thereafter posted said property for sale on May 10, 1966." (Emphasis added) Appellants' Opening Brief at 8.
 
 
 23
 The record does not support that claim as to the personal property at issue in this case and neither the Referee could make nor the district court affirm such a finding. Appellant points to Volume Three of the Reporter's Transcript for proof of the seizure of the personal property here in question. At that point in the testimony before the Referee in Bankruptcy, Mr. James J. Scully, Supervisor of Personal Property Taxes, County of Alameda, identified the Notice of Sale of May 10, 1966. It was offered by appellant and marked as "Securities Exhibit No. 1." That document, however, does not pertain to the property before this court. It recites a seizure and notices for sale the following:
 
 
 24
 "* * * the buildings known as the Edgewater Inn, located at 455 Hegenberger Road in the City of Oakland as well as taxpayer's right, title and interest in the ground lease upon which the buildings are situated."
 
 
 25
 There is no mention made of any personal property. Therefore, if the property seized was the "said" property offered for sale on May 10, 1966, the Notice of Sale does not support the claim of the Tax Collector's possession of the personal property on March 30, 1966. Following the Notice of Sale in 1966,[12] the debtor in possession remained in possession of the hotel property pursuant to stipulation with the County of Alameda approved by the Referee in Bankruptcy. It was not until February 20, 1968, that a Notice of Sale of personal property in the hotel was given. Long before this the petition had been filed and possession (if it was in fact in the debtor), passed to the Bankruptcy Court, irrespective of considerations of title.
 
 
 26
 Apart from the confusion in the record as to just what was seized by the Tax Collector in the 1966 proceedings, in the present case the property appears to have been in the possession of the debtor in possession as well as the possession of the Tax Collector. Certainly there does not appear to have been any question raised by the Tax Collector about the debtor's title. The Tax Collector thereafter entered into a stipulation approved by the Referee that the debtor should remain in possession while attempts to work on its financial problems were progressing. The possession of both the Tax Collector and of the debtor was as their interests might appear.
 
 
 27
 The Tax Collector claimed possession in order to assert a statutory lien to collect taxes in a limited amount. If the taxes were otherwise paid, his right to possession terminated. If a sale of a portion of the property generated sufficient funds to pay the tax liability, his right to possession of the remainder of the property terminated.
 
 
 28
 The jurisdiction of the Bankruptcy Court was recognized by all. The Referee's approval was obtained to all orders of importance and the debtor operated the property. All parties seemed to recognize that there was a significant potential value in the property which made it a possible asset of the estate of substantial value, over and above the claims of the secured creditors. Under these circumstances we are not persuaded that summary jurisdiction in the Bankruptcy Court and its implied finding to that effect was clearly erroneous.
 
 
 Title Acquired at Tax Sale
 
 
 29
 Security argues that irrespective of its other contentions it can rest assured of the validity of the title it says it acquired by tax sale.
 
 
 30
 The factual setting for this argument goes back to the events of 1966 when the county seized some property of the debtor on March 30, 1966, and noticed the sale of "said" property on May 10, 1966. The "said" property noticed for sale did not include any furniture, furnishings or chattels, leading to the uncertainty noted before as to whether the chattels were in fact seized. In any event, the Tax Collector was no stranger to the bankruptcy proceedings. He entered into a stipulation in July, 1966, with the debtor in possession under the Chapter XI proceeding which was approved by the Referee. The County Counsel obtained from the Referee on January 16, 1968, an order extending the time to February 19, within which the county could remain in possession of "that property of the above named bankrupt presently held under seizure." On January 30, 1968, the County Counsel prepared a different paper in the form of a stipulation permitting it to continue in possession of "that certain property known as the Edgewater Inn" (without describing the property) for an unstated time. This stipulation recited among other things that the Trustee does not concede Alameda County's right to be in possession, and claims it to be a trespasser. The stipulation reserved the claims of all parties and was signed by the County Counsel, the Trustee and the Referee.
 
 
 31
 American had filed a Petition for Reclamation on September 6, 1967, of its chattels and an order issued to show cause why its petition should not be heard, but the hearing was postponed. Westinghouse had done likewise on February 8, 1968.
 
 
 32
 The Trustee obtained an order for private sale and stipulated with American and Westinghouse that if the property remained unsold by March 12, 1968, he would abandon it. The hearing on the reclamation petitions was then continued until March 12, 1968. The trust deed on the building and leasehold was foreclosed and Security obtained title to those major items. On February 13, 1968, the Trustee held a public sale of the personal property, offering to convey whatever interest the bankrupt might have. It was subject to the claims of American and Westinghouse and the tax claims. No bidders appeared and the property was then sold to Security on the same basis, i. e., subject to claims.
 
 
 33
 Having thus obtained the title to the buildings and leasehold by foreclosure of its trust deed, and having obtained the bankrupt's interest in furniture, furnishings and chattels subject to the liens of American and Westinghouse and subject to tax claims, it proceeded to attempt to purchase the property a second time from the Tax Collector.[13]
 
 
 34
 The Tax Collector, in disregard of its January 30, 1968, stipulation, in which the trustee disputed the Tax Collector's right to possession and reserved the claims of all parties, and without actual notice to any of the parties claiming interests in these assets, including American and Westinghouse,[14] purported to conduct a public sale of the contested personal property. Security was apparently made aware of this sale and "bid in" his own property for the amount of unpaid taxes and received a bill of sale from the county. The Petition for reclamation of American was granted March 12, 1968, and modified March 19, 1968, and that of Westinghouse was granted May 6, 1968.[15] Security would urge that by these maneuvers and particularly its "bidding in" of the property at the tax sale it acquired a title which squeezed out the claims of American and Westinghouse although it was fully aware of each.[16]
 
 
 35
 The legal position of Security on these facts is that it does not rely on its title acquired from the Trustee on February 13, 1968, to defeat appellees' claims. Indeed, it cannot because that Trustee's sale was expressly subject to the claims of appellees and whatever rights they could establish upon the hearing of their pending Petitions for Reclamation. However, no one questions the fact that by the Trustee's sale, the payment of a substantial consideration thereon and its confirmation subject to existing lien rights and tax claims, Security did become the owner of the bankrupt's interest. The appellant, rather, relies upon the tax sale title. The appellees, however, contend that Security could not be a "purchaser" at a tax sale, but must be considered an owner redeeming its own property from outstanding taxes.[17]
 
 
 36
 Recently the California Court of Appeals has pointed out that a tax sale of personalty, unlike a conveyance of realty which has previously been acquired by the state by tax sale, does not convey an unimpeachable title. Dohrmann Co. v. Security Savings & Loan Association, 8 Cal.App.3d 655, 87 Cal.Rptr. 792 (1970). That case involved a different lot of chattels in the same bankruptcy proceedings and Security had followed the same format, i. e., Security had acquired the bankrupt's title on both realty and chattels and voluntarily paid the real property taxes before the noticed sale, but let the chattels go to "sale" where it bid them in for taxes rather than redeem them from taxes as an owner. Security then claimed it had acquired a title by tax sale free and clear of Dohrmann's prior lien claims.
 
 
 37
 The trial court in Dohrmann after general demurrers by both sides treated the matter as submitted with the allegations in the complaint taken as true. It entered judgment on the pleadings in favor of defendant Security and the Tax Collector, also a defendant. The District Court of Appeal reversed the judgment, holding alternatively that the tax sale was invalid for insufficient notice and that upon the facts Security was not in a position to preclude Dohrmann's senior interest when it purchased the tax title at the sale.[18] Supra, 8 Cal.App. 3d at 663, 87 Cal.Rptr. 792.
 
 
 38
 Having determined that the Bankruptcy Court had summary jurisdiction to proceed it is clear that upon the authority of Dohrmann, supra, Security here, as there, purchased at the tax sale with actual knowledge of the senior interest of both plaintiffs, just as it had purchased with such actual knowledge at the Trustee's sale some two weeks prior. Having done so it could not preclude the plaintiffs from asserting their superior lien because of the tax sale any more than Security could do so in Dohrmann. It is not necessary to determine the question of the invalidity of the tax sale because of lack of adequate notice, although the circumstances point strongly to that conclusion here as well.
 
 
 39
 EXHAUSTION OF JURISDICTION OF BANKRUPTCY COURT BY CONFIRMATION OF SALE OF CHATTELS
 
 
 40
 The other issue raised by the appellants is the effect of the confirmation by the Referee of the Trustee's sale of personalty on the jurisdiction of the Bankruptcy Court to rule on the Petitions for Reclamation. The petition of American was filed on September 6, 1967, and that of Westinghouse on February 5, 1968. Orders to show cause were issued when the petitions were filed but hearings thereon were continued from time to time, presumably to permit attempts to sell the hotel as an operating unit since the personalty involved included furniture and furnishings. The last continuance as to Westinghouse was by stipulation between the petition for reclamation and the trustee to the effect that petitioner would not reclaim its property until March 1, 1968, and that the administrative rent for the period from adjudication until March 1, 1968, would be the sum of $1,650.00.[19]
 
 
 41
 The petition as to American was granted on May 2, 1968, pursuant to Findings and Conclusions as of that date,[20] and that of Westinghouse as of May 6, 1968.[21]
 
 
 42
 The Trustee's sale of the bankrupt's interest in the personal property took place on February 13, 1968, while both petitions for reclamation were on file and pending. Both the sale and the confirmation were made without notice to the petitioners, although Security had knowledge of the prior claims of American and Westinghouse and of the pending Petitions for Reclamation.[22]
 
 
 43
 The sale and the confirmation made it plain that the title which Security acquired from the Trustee was subject to the claims of American and Westinghouse as evidenced by their Petitions for Reclamation and also subject to unpaid taxes.[23]
 
 
 44
 Yet Security contends that the Bankruptcy Court lost jurisdiction to determine the very claims filed with it, because the Trustee sold subject to the unresolved claims. One of the functions and responsibilities of the Bankruptcy Court is to allow or disallow claims against bankrupt estates. 11 U.S.C. § 11(a)(2).
 
 
 45
 "Nevertheless the Bankruptcy Court has the power to determine the manner in which liens against property of the bankrupt coming into its hands may be enforced in order to protect whatever equity there may be for the general creditors and may sell the property either free or clear of liens or subject to them. Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256 (1931)." In re Bernhard Altmann International Corporation, 226 F.Supp. 201, 205 (S.D.N.Y. 1963).[24]
 
 
 46
 Security recognized the personal property in contention here as an asset of the bankrupt estate when it negotiated with the Trustee for the purchase of the bankrupt's interest and paid a substantial sum of money for it. The Petitions for Reclamation which it agreed to have determined were petitions filed in the Bankruptcy Court before the Referee and subject to his determination. It therefore consented to further jurisdiction of the Bankruptcy Court for that purpose.
 
 
 47
 Security relies upon In re Paddock of California, 226 F.Supp. 43 (S.D.Cal. 1964) for support. We do not find that Paddock helps Security. In that case a Receiver in a Chapter XI proceeding sold assets of the debtor among which were three trade names. As one of the terms of sale the Receiver agreed to defend the buyer against unauthorized use of those names by others during a limited period. When the petitioner, a third person not involved in the bankruptcy proceeding, attempted to use one of the names, the Receiver applied to the Bankruptcy Court in proceedings designed to obtain an injunction. The petitioner asserted lack of jurisdiction and was sustained. The action which the receiver proposed involved a collateral proceeding with third persons. Here the asset was in control of the Bankruptcy Court for purposes of administration, the Trustee was an official of that court and the proposed purchaser and the holders of the prior liens had all invoked the jurisdiction of the court. The matter of the determination of the validity of the Petitions for Reclamation was still a matter very much in the bosom of the court.
 
 
 48
 The judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 C.T. 236, Finding of Fact No. 7
 
 
 [2]
 The Referee made a finding of fact that no notice was given to Westinghouse, C.T. 235, No. 3, and C.T. 236, No. 8, or to American, C.T. 150, No. 3
 
 
 [3]
 R.T. of March 25, 1968, at 28
 
 
 [4]
 For instance, the notice which was posted as well as the bill of sale which the Tax Collector furnished Security lists items claimed by Westinghouse under a special category:
 "Items being purchased on Conditional Sales Contract from Westinghouse Credit Corp."
 
 
 [5]
 § 711. Exclusive jurisdiction of debtor and property
 "Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located."
 
 
 [6]
 "That section gives to the Chapter XI court greater jurisdiction than is possessed by the court in an ordinary bankruptcy proceeding under Chapters I to VII." 8 Collier on Bankruptcy, 3.01 at 166 (14th ed. 1969)
 
 
 [7]
 That is well illustrated here where the only substantial asset is the hotel property
 
 
 [8]
 The general summary jurisdictional statement so frequently relied upon is as follows:
 "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy." Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 630 (1970) (Footnote omitted).
 The footnote to that statement indicates that the Court relies upon Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100 (1938), a case decided upon facts arising prior to the passage of the Chandler Act and the enactment of Chapter XI. The jurisdictional section of Chapter XI is not mentioned in either Thompson, supra, nor in Harris, supra.
 Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924), relied upon by appellant, also antedated Chapter XI.
 
 
 [9]
 To the same effect, see 8 Collier on Bankruptcy, § 3.02, at 181:
 "Under Section 311, either ownership in the debtor at petition filed, or possession of the court, is a basis for summary jurisdiction over controversies."
 
 
 [10]
 Some of these earlier cases may indeed be distinguished on their facts and perhaps were by the panels writing the later opinions
 
 
 [11]
 Lloyd v. Stewart & Nuss, Inc., 327 F.2d 642, 645 (9th Cir. 1964); Pasadena Investment Co. v. Weaver, 376 F.2d 175, 178 (9th Cir. 1967). Here the legal title under the conditional sales contracts was reserved until the purchase price was paid, but no question has been raised by the assignees of those contracts who have filed Petitions for Reclamation and consented to summary jurisdiction
 
 
 [12]
 Appellee's brief before this court seems to admit the contention of appellants that the "contents" of the hotel were seized on March 30. In the absence of other evidence this admission would conclude the matter. Where the only evidence in the record before this court is to the contrary, however, we could not find that the order of the district court which affirmed the findings and orders of the Referee, was clearly erroneous
 
 
 [13]
 Mr. Richard Finnegan, a Director of Security, testified that at one meeting he had a conversation with the attorney for American suggesting that American be contacted because it looked to him "as if we'd be attempting to make a deal." R.T. Mar. 25, 1968 at 20. He further testified that when Security bought from the Trustee it paid $54,000.00 for the bankrupt's interest in the personal property. Id. at 25. He then testified that at the time of the Trustee's sale on February 13, 1968, he knew of the pending Petitions for Reclamation. Id. at 32
 
 
 [14]
 The only notice given was notice by posting in three public places
 
 
 [15]
 The modification is not material to this issue
 
 
 [16]
 Findings of Fact of Referee with respect to knowledge of Security of lien claims of Westinghouse and American at date of Trustee's sale on February 13, 1968. C.T. at 150
 Security also in its own proposed findings of fact acknowledged with respect to the Trustee's sale on February 13, 1968, that (1) it knew the sale to it was made subject to claims set out in reclamation petitions and (2) that such sale was made without notice. C.T. at 134, Proposed Findings 9 and 10.
 
 
 [17]
 With respect to the buildings and leasehold estate which Security had obtained by foreclosure of its trust deed, Security did not "purchase" this property again at tax sale, but went to the Tax Collector after the Notice of Sale had been posted and paid the taxes, thus redeeming the property before the sale was held. Appellee points out that it could have followed the identical procedure with respect to the sale for personal property taxes, and that, in substance and in fact, was what occurred
 
 
 [18]
 The court noted that the defendants had argued that relief to the plaintiffs should be denied because the plaintiffs did not exercise diligence in protecting their claims. Dohrmann Co. v. Security Savings & Loan Ass'n., 8 Cal.App.3d 655, 666, 87 Cal.Rptr. 792 (1970). That issue is not raised in this appeal nor does it appear to have been urged below
 
 
 [19]
 Referee's Finding No. 7, C.T. 236, Westinghouse. The Finding of the Referee as to American was somewhat different in that the stipulation and rental items were not mentioned. C.T. 149-150
 
 
 [20]
 C.T. 148-151. The order granting reclamation was entered March 12, 1968, and modified May 6, 1968. C.T. 144-146
 
 
 [21]
 C.T. 234-237. The order granting reclamation was entered on May 6, 1968. C.T. 221-223
 
 
 [22]
 Referee's Findings, C.T. 148-151; 234-237. Conversation between Security's Board Member Finnegan and attorney for American. R.T. March 25, 1968, at 20, 32
 
 
 [23]
 Appellants' Opening Brief, at p. 11
 
 
 [24]
 See also In re Dennis Mitchell Industries, Inc., 419 F.2d 349 (3rd Cir. 1969).